Lori Einhorn et al., Respondents, v David Seeley et al., Respondents, and Rem Discount Security Products, Inc., Appellant.

First Department, March 8, 1988

**APPEARANCES OF COUNSEL**

*Kenneth Kirschenbaum* of counsel *(Ira Levine* with him on the brief; *Kirschenbaum & Kirschenbaum, P. C.,* attorneys), for appellant.

*Michael C. Lesser* of counsel *(Louis Engelmayer,* attorney), for Lori Einhorn and another, respondents.

**OPINION OF THE COURT**

Asch, J.

On June 7, 1981, the plaintiff, Lori Einhorn, was allegedly assaulted and raped in the building at premises located at 15 East 21st Street. She was accosted on the second floor landing and dragged by her assailant, concededly not a tenant, up the stairway, to the third floor, where the attack occurred inside of the apartment she was visiting. This action for personal injuries was commenced against the owner, David Seeley and 15 East 21st Street Co., and against appellant, Rem Discount Security Products, Inc. (Rem). Plaintiffs claim that Rem had improperly installed or repaired the lock on the front door of the building, through which the assailant may have entered the premises. They contend that the front door lock of the building was broken to such an extent that the door could be opened "with a firm push, even when locked", that this condition had been in existence for some time and brought to the attention of the landlord. At the time of this horrendous event, Lori was not a tenant. She and Kenneth Einhorn, the tenant, were engaged. They were not married until April 10, 1983, almost two years after the assault.

The Supreme Court denied Rem's motion for summary judgment and its subsequent motion to renew. We reverse since we find no support for a different result under the established principles of contract or tort law. We do not

believe that an extension of liability under the facts herein alleged, to comprehend a locksmith, for injury to a person not in privity with the locksmith, actually perpetrated by a stranger to both plaintiffs and defendants, allegedly arising out of a negligent repair or installation of a front door lock, is warranted.

■ Defendant Rem, in support of its motion for summary judgment, asserted, by its president, that it had no contract with plaintiffs with respect to the locksmith services it furnished the codefendant landlord. Significantly, in their opposition, plaintiffs never specifically asserted the existence of a contractual duty, express or otherwise, on the part of defendant Rem toward them. Rather, in a conclusory fashion, they alleged that Rem's duty to plaintiff Lori Einhorn was "clearly established" and that "by undertaking to install and/or repair locks on the front door, defendants themselves created a duty to the tenants to properly install and/or repair security devices on the front door of the premises". It is clear, therefore, that an action based upon an express contract between plaintiffs and defendant locksmith, Rem, does not lie.

The action is, of course, not maintainable in contract on a third-party beneficiary theory since plaintiffs were, at most, incidental rather than intended beneficiaries of any agreement between the landlord and Rem *(Moch Co. v Rensselaer Water Co.,* 247 NY 160). "The first obstacle which arises is the fact that there has been no direct transaction between the plaintiff and the defendant, which usually is expressed by saying that they are not in 'privity' of contract. There is thus no logical basis upon which the one may be required to perform the contract for the other, unless the contract has been made expressly for the benefit of the plaintiff, or it has been assigned to him." (Prosser and Keeton, Torts § 93, at 667 [5th ed].)

Fortunately, *Moch Co. v Rensselaer Water Co. (supra)* furnishes a signpost which helps us. In that case, an individual member of the public brought an action against a waterworks company for damages suffered as a result of defendant's negligent failure to furnish an adequate supply of water so as to extinguish a fire. Justice (then Chief Judge) Cardozo wrote an analysis, in 1928, which is still valid today and which furnishes the rationale for this opinion: "The plaintiff would have us hold that the defendant, when once it entered upon the performance of its contract with the city, was brought into such a relation with every one who might potentially be

benefited through the supply of water at the hydrants as to give to negligent performance, without reasonable notice of a refusal to continue, the quality of a tort * * * We are satisfied that liability would be unduly and indeed indefinitely extended by this enlargement of the zone of duty. The dealer in coal who is to supply fuel for a shop must then answer to the customers if fuel is lacking. The manufacturer of goods, who enters upon the performance of his contract, must answer, in that view, not only to the buyer, but to those who to his knowledge are looking to the buyer for their own sources of supply. Every one making a promise having the quality of a contract will be under a duty to the promisee by virtue of the promise, but under another duty, apart from contract, to an indefinite number of potential beneficiaries when performance has begun. The assumption of one relation will mean the involuntary assumption of a series of new relations, inescapably hooked together. Again we may say in the words of the Supreme Court of the United States, 'The law does not spread its protection so far' " *(Moch Co. v Rensselaer Water Co., supra,* at 168).

Accordingly, plaintiffs, in opposing Rem's summary judgment motion, have completely failed to come forward with any viable theory for recovery on the basis of contractual obligation.

Plaintiffs are, therefore, relegated to the cause of action in tort pleaded in their first cause of action. "A defendant may be held liable for negligence only when it breaches a duty owed to the plaintiff *(Pulka v Edelman,* 40 NY2d 781, 782)." *(Strauss v Belle Realty Co.,* 65 NY2d 399, 402.) The essential question here is whether the defendant locksmith owed a duty, apart from contract, to plaintiffs. In deciding whether or not there is such liability, as Judge Kaye pointed out in the *Strauss* case: "But while the absence of privity does not foreclose recognition of a duty, it is still the responsibility of courts, in fixing the orbit of duty, 'to limit the legal consequences of wrongs to a controllable degree' *(Tobin v Grossman,* 24 NY2d 609, 619; *see also, Howard v Lecher,* 42 NY2d 109), and to protect against crushing exposure to liability *(see, Pulka v Edelman,* 40 NY2d 781, *supra; Ultramares Corp. v Touche,* 255 NY 170). 'In fixing the bounds of that duty, not only logic and science, but policy play an important role' *(De Angelis v Lutheran Med. Center,* 58 NY2d 1053, 1055; *see also, Becker v Schwartz,* 46 NY2d 401, 408). The courts' definition of an orbit of duty based on public policy may at times result

in the exclusion of some who might otherwise have recovered for losses or injuries if traditional tort principles had been applied" *(supra,* at 402-403).

■ There is no basis in tort for liability in this case. This is not a case in which the defendant locksmith itself injured the plaintiff either by a direct volitional act or even by some negligent act, i.e., leaving a bag of tools in a doorway. Here, the act complained of by plaintiff was perpetrated by an intervening person. There will ordinarily be no duty thrust on a defendant to prevent a third party from causing harm to another. The exception may occur in the case where a special relationship exists between the defendant and the third person so as to give rise to a duty to control, or alternatively, when a special relationship exists between the defendant and the victim which gives the latter the right to protection (Restatement [Second] of Torts § 315). Thus, such special relationships have been held to include employers-employees, owners and occupiers of premises, common carriers and their patrons, and hosts who serve alcoholic beverages to their guests, among others *(see,* Annotation, *Private Person's Duty and Liability for Failure to Protect Another Against Criminal Attack by Third Person,* 10 ALR3d 619; 1 Dooley, Modern Tort Law § 3.12, at 34 [1982 rev ed]). Although plaintiffs plead such duty on the part of defendant Rem, it is clear that they do not fit into any category which has been held to constitute such a special relationship.

It may be that the landlord is liable to the victim, Lori Einhorn. While there have been a few cases in which the landlord has been held liable to a tenant who has been a victim of crime as a result of a defective lock, none of those cases extends the zone of duty to include a third party who was hired by the landlord to install or repair the lock and who does so improperly. The expansion of the net of obligation to enmesh a landlord in such situation has been a slow process based on discriminating selection and wanton conduct on the part of the landlord. As pointed out by Presiding Justice Murphy, writing for this court in *Gill v New York City Hous. Auth.* (130 AD2d 256, 262-263): "A landlord is, of course, under a duty to take reasonable security measures to protect his tenants from the intentional criminal acts of others if he knows or should know that common areas upon his premises have been the scene of recurrent criminal activity *(Nallan v Helmsley-Spear, Inc.,* 50 NY2d 507, *supra; Miller v State of New York,* 62 NY2d 506). Thus, a landlord's failure to main-

tain locks *(see, Miller v State of New York, supra)* or to post security personnel at entrances *(see, Nallan v Helmsley-Spear, Inc., supra)*, or to provide adequate lighting in places where criminals are known to lurk *(see, Loeser v Hale Gardens,* 73 AD2d 187) may constitute negligence for which the landlord can be held accountable. And, indeed, this is as it should be because a landlord in his proprietary capacity is responsible for and presumed to be capable of maintaining his premises in reasonably secure and physically safe condition. *(See, Nallan v Helmsley-Spear, Inc., supra,* at 519; *see also,* Prosser and Keeton, Torts § 57, at 386 [5th ed 1984].)" *(See also, Waters v New York City Hous. Auth.,* 69 NY2d 225; *Sherman v Concourse Realty Corp.,* 47 AD2d 134.) It is noteworthy that in all of these cases the defendant landlord had notice of the dangerously defective locks or other security devices, as well as of the criminal activity. Thus, liability of the landlord who has a direct relationship with the tenant, even as compared with defendant locksmith, has itself been seriously limited, as a matter of public policy.

Applying this analysis to the facts as presented to us, it seems clear that the locksmith, defendant Rem, did not undertake a duty to plaintiff Lori Einhorn when it entered into its relationship with the defendant landlord. Here we are concerned with a possible liability for an injury to a mere guest of a tenant caused by an unlawful act of a third party. Under these circumstances, to hold a locksmith responsible for the alleged consequences of an allegedly defective lock would be to enlarge the obligations of such artisans far beyond the existing law and beyond sound public policy.

The dissent argues that a trial is required to resolve the issues of liability with which we are presented. But this does not seem to be at all necessary under the circumstances herein. A locksmith is not answerable to the guest of a tenant, injured on the premises as the result of an attack perpetrated by a stranger who may have entered the building as a result of a defective lock, installed or maintained by an arrangement of the landlord with the locksmith. Accepting all of the facts claimed by the plaintiffs as being true, we follow the lead of the Court of Appeals in an analogous case, *Strauss v Belle Realty Co.* (65 NY2d 399, *supra)* and "we reject the suggestion of the dissent that there should be a fact-finding hearing" *(supra,* at 405).

The day may well come when all victims of horrendous experiences, such as plaintiff Lori Einhorn, will be compen-

sated either by government (*see,* Holmes, The Common Law) or universal insurance (Friedmann, Law in a Changing Society, ch 5 [2d ed 1972]) or some other institutional device. But that day has not yet arrived. While traditional theories of liability continue to expand, unfortunately for plaintiffs neither the law of contract nor tort have been broadened sufficiently to encompass their claims herein.

Accordingly, the order of the Supreme Court, New York County (Martin Stecher, J.), entered September 3, 1986, which denied defendant Rem Discount Security Products, Inc.'s motion for summary judgment dismissing the complaint as to it, should be reversed, on the law, and summary judgment dismissing the complaint as against defendant Rem granted, without costs or disbursements. The appeal from the order of the Supreme Court, New York County (Martin Stecher, J.), entered April 8, 1987, which had denied defendant Rem's motion for renewal, is dismissed as academic.

KASSAL, J. (dissenting in part). I would grant summary judgment to defendant Rem Discount Security Products Inc. (Rem) solely with respect to dismissing the second and third causes of action.

The second cause of action, for punitive damages, is legally deficient. It is well settled that a claim for punitive damages does not constitute a separate cause of action. *(Green v Fischbein, Olivieri, Rozenholc & Badillo,* 119 AD2d 345, 351; *Carroll v New York Prop. Ins. Underwriting Assn.,* 88 AD2d 527, 528, *lv dismissed* 57 NY2d 774; *Bunker v Bunker,* 73 AD2d 530.) Rather, such a claim constitutes only an element of the total damages sought on the underlying cause of action. *(APS Food Sys. v Ward Foods,* 70 AD2d 483; *Goldberg v New York Times,* 66 AD2d 718; *M.S.R. Assocs. v Consolidated Mut. Ins. Co.,* 58 AD2d 858.)

Similarly deficient is the third cause of action by Kenneth Einhorn to recover for loss of "society, companionship and consortium of his wife". The record clearly indicates that on the date of the injuries plaintiffs were not yet married, although they were engaged and Lori was in the process of moving into Kenneth's apartment in the subject premises. They were not, however, actually married until April 10, 1983, almost two years after the assault.

Although this issue has not been addressed by the Court of Appeals, the Second and Fourth Departments have held that an action for loss of consortium may not be maintained unless

the party seeking such damages was married to the injured person at the time the actionable conduct occurred. *(See, Briggs v Butterfield Mem. Hosp.,* 104 AD2d 626; *Rademacher v Torbensen,* 257 App Div 91.) In *Miller v Davis* (107 Misc 2d 343) the cause of action was dismissed, notwithstanding that the parties were to be married on the date of the accident and were actually married the next day. As was observed by the Second Department in *Briggs (supra,* at 626): "[I]n virtually every jurisdiction of the United States, a lawful marriage at the time the claim arises is a prerequisite to recovery for loss of services (see, e.g., *Weaver v Searle & Co.,* 558 F Supp 720; *Laws v Griep,* 332 NW2d 339 [Iowa]; *Tremblay v Carter,* 390 So 2d 816 [Fla App]; *Sostock v Reiss,* 92 Ill App 3d 200; *Angelet v Shivar,* 602 SW2d 185 [Ky])."

Accordingly, I would dismiss the second and third causes of action as legally insufficient.

I cannot, however, agree with the majority that the entire complaint against Rem must be dismissed as a matter of law. The majority premises its determination to grant total summary judgment on the grounds that plaintiffs were neither in privity of contract with Rem nor within the class of persons to whom that security company owed a duty of care.

First, I note that it has long been recognized that "the absence of privity does not foreclose recognition of a duty" *(Strauss v Belle Realty Co.,* 65 NY2d 399, 402), for "[t]here is nothing anomalous in a rule which imposes upon A, who has contracted with B, a duty to C and D and others according as he knows or does not know that the subject-matter of the contract is intended for their use". *(MacPherson v Buick Motor Co.,* 217 NY 382, 393.) Thus, I must disagree with the reasoning by which plaintiffs would be denied their day in court against Rem simply because the latter's services were performed pursuant to a contract with the codefendant landlord.

Yet more troubling, is the majority's position with respect to the scope of Rem's duty of care. Here, it is urged that plaintiffs may not assert a claim in negligence against Rem because they did not have a special relationship with the security company which would render it obligated to prevent a third party from causing harm to plaintiff Lori Einhorn. This is not the issue. Rather, the issue is whether Rem could reasonably have perceived a risk to the tenants of the building if it performed its locksmith services negligently. As the Court

of Appeals has recently reiterated: [T]he concept of a duty of care, which is essential to the law of negligence, has meaning only when it is considered in relation to both the harm that the duty exists to prevent and the class of individuals to whom it is owed. 'The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension' that delimits the duty's scope *(Palsgraf v Long Is. R. R. Co.,* [248 NY 339] 344)." *(Waters v New York City Hous. Auth.,* 69 NY2d 225, 228-229.)

Here, Rem undertook to install, repair and/or maintain the lock on the front door of the premises where plaintiff Kenneth Einhorn, then Lori Einhorn's fiancé and now her husband, resided. As its very name, Rem Discount Security Products, Inc., denotes, Rem is in the business of providing goods and services that insure security. It is reasonable to assume that a business engaged in such services in this city is well aware of the risks created when its work is not properly performed. In working on the lock that secures the front door of the subject premises, Rem was, therefore, aware that the safety of persons residing therein, as well as that of their guests, was at stake and, indeed, that protection of such persons and their property was the very purpose of its work. Thus, we have here the " 'risk reasonably to be perceived * * * to another * * * within the range of apprehension' ", and its concommitant duty. *(Waters v New York City Hous. Auth., supra,* at 229, quoting *Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 344, *supra.)*

I further point out that acknowledging the existence of a category of persons to whom Rem owed a duty of care will not, as the majority fears, expose locksmiths to unlimited liability and contravene notions of "sound public policy". Unlike in *Moch Co. v Rensselaer Water Co.* (247 NY 160), relied upon by the majority, the within plaintiffs are part of a limited and readily definable class, namely, the tenants, and their invitees, of the premises defendant has serviced for the purpose of providing security.

Once it has been determined that plaintiffs are within a category of persons to whom Rem owed a duty of care, we must turn to whether there exist issues of fact sufficient to defeat a motion for summary judgment. This "drastic remedy" is rarely granted in negligence cases. *(Andre v Pomeroy,* 35 NY2d 361, 364.)* An examination of the record reveals no cause for exception here. The critical issues for the trier of fact are foreseeability and proximate cause, and it is in that

regard that several factual issues should await resolution at trial. Among them are the nature and extent of the relationship between Rem and the codefendant owners of the building, the adequacy and timing of the repairs and/or installation made by Rem with respect to the front door lock, and the manner by which the assailant entered the building, including whether entry could have been gained by means other than the front door.

Accordingly, I would modify the order appealed from solely to the extent of dismissing the second and third causes of action, and otherwise affirm.

MURPHY, P. J., and CARRO, J., concur with ASCH, J.; SANDLER and KASSAL, JJ., dissent in part in an opinion by KASSAL, J.

Order, Supreme Court, New York County, entered on September 3, 1986, reversed, on the law, and summary judgment dismissing the complaint as against defendant Rem granted, without costs and without disbursements, and the appeal from the order of said court, entered on April 8, 1987 is dismissed as academic.