**FAHNESTOCK & CO. INC., formerly known as Edward A. Viner & Co., Inc., Plaintiff,**

v.

**Victor M. CASTELAZO, Sr., individually and as Guardian of the Property of Victor M. Castelazo, III and Laura C. Castelazo, Manufacturers Hanover Trust Company and Haythe & Curley, Defendants.**

**No. 90 CIV 1358 (LBS).**

United States District Court, S.D. New York.

July 11, 1990.

---

Michael C. Pelletier, New York City, for plaintiff.

Robert M. Rosenblith (Robin J. Arzt, of counsel), New York City, for defendant Mfrs. Hanover Trust Co.

Dorsey & Whitney (James R. Kahn, Robert G. Manson, of counsel), New York City, for defendant Victor M. Castelazo, Sr.

D'Amato & Lynch (Richard G. McGahren, Samuel B. Young, of counsel), New York City, for defendant Haythe & Curley.

## OPINION

SAND, District Judge.

By order of the New York County Surrogate's Court, defendant Victor M. Castelazo, Sr. ("guardian") was appointed guardian of the property of Victor M. Castelazo, III and Laura C. Castelazo, his infant grandchildren ("infants"). Pursuant to the Surrogate Court's order, all moneys and properties of the infants were paid over and delivered to defendant Manufacturers Hanover Trust Company ("MHT") as depository, and MHT was directed to comply with the directions of the guardian as to the investment or reinvestment of the property and the income collected from that property. Plaintiff's complaint alleges that defendant Haythe and Curley ("H & C") acted as counsel to the guardian and the infants "at all relevant times." In August 1984, the guardian authorized MHT to follow the written instructions of his financial advisor, Toni Vallen ("Vallen"), to sell, deliver or exchange securities held in the custody accounts.

In or about October, 1987, the guardian, through Vallen, opened two accounts with plaintiff Fahnestock & Co. Inc. (formerly Edward A. Viner & Co., Inc.) through Pace Securities, Inc., plaintiff's forwarding broker, for the purpose of engaging in transactions involving the purchase and sale of

securities. Evidently, on October 8, 1987 oral instructions had been issued to MHT by the guardian's son purportedly revoking Vallen's authority to trade on behalf of the accounts. The complaint alleges that on or about October 16, 1987 and October 27, 1987, the guardian through Vallen, directed that shares of certain specific securities be purchased in the accounts. The complaint also alleges that plaintiff purchased the shares and that the guardian failed to pay plaintiff for the purchases.

Plaintiff commenced an action against Vallen alleging that she was part of a conspiracy to manipulate the prices of various securities, including those allegedly involved in the transactions which form the basis for this action. The case, *Edward A. Viner & Company, Inc. v. Capital Shares, et al.*, 87 Civ. 7788 (LBS), is presently before this Court along with eight other actions arising out of the same alleged conspiracy.

Plaintiff, through different counsel, commenced this action on February 2, 1990 in the Supreme Court of the State of New York, asserting causes of action against the guardian for breach of contract, against MHT for breach of contract as a third-party beneficiary, and against all the defendants for negligence. The action was removed to this Court on March 1, 1990. Presently before the Court are plaintiff's motion to remand the case to state court and the motions of defendants MHT and H & C to dismiss or for summary judgment and for sanctions.

Plaintiff contends that this action was improperly removed. Specifically, plaintiff argues that its complaint does not state a "separate and independent" claim against defendant Castelazo, the one defendant with diverse citizenship to plaintiff, of the type which would make this action properly removable under 28 U.S.C. § 1441(c). We need not consider plaintiff's argument concerning separateness, however, for we find that there was no reasonable basis for predicting that state law might impose liability against defendants MHT and H & C, and we find that these defendants were joined in this action for the sole purpose of defeat-ing diversity. As a result, we conclude that this action was properly removable under 28 U.S.C. § 1441(a) because without the improper joinder of MHT and H & C, this action would have fallen within this Court's original jurisdiction.

We find no merit to plaintiff's argument that defendants did not remove this action under Section 1441(a). The notice of removal clearly states that removal is taken "[p]ursuant to 28 U.S.C. §§ 1441(a) and 1441(c)" and that the claims were asserted "for the sole purpose of attempting to prevent or defeat a removal of the Action to [federal] court." *See* Notice of Removal at 1 & 4.

### Discussion

■ In order to show that the naming of non-diverse defendants was a fraudulent joinder effected to defeat diversity jurisdiction and that the action was therefore properly removable under Section 1441(a), defendants must show bad faith with sufficient certainty and that there is no "reasonable basis for predicting that state law might impose liability on the non-diverse defendant." *American Mut. Liability Ins. Co. v. Flintkote Co.*, 565 F.Supp. 843, 845 (S.D.N.Y.1983); *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205 (5th Cir.1983), *cert. denied*, 464 U.S. 1039, 104 S.Ct. 701, 79 L.Ed.2d 166 (1984); *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983). All factual and legal issues must be resolved in favor of the plaintiff. *S.A. Auto Lube, Inc. v. Jiffy Lube Int'l, Inc.*, 842 F.2d 946, 950 (7th Cir.1987). The Court must examine plaintiff's claims to determine whether they have any merit and thus preclude a finding that they were fraudulently asserted to defeat diversity.

There is no basis in fact or under New York law for plaintiff's contract claim against MHT. Under New York law, only an intended beneficiary of a contract may assert a claim as a third party. *Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 655, 389 N.Y.S.2d 327, 330, 357 N.E.2d 983 (1976). An intended beneficiary is one whose "right to performance is 'appropriate to effectuate the intention of the par-

ties' to the contract *and* either the performance will satisfy a money debt obligation of the promisee to the beneficiary or 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.'" *Lake Placid Club Attached Lodges v. Elizabethtown Builders, Inc.*, 131 A.D.2d 159, 521 N.Y.S.2d 165, 166 (3rd Dep't 1987) (quoting Restatement Second of Contracts § 302(1)(a) & (b) (1979)). *See also Septembertide Publishing B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 679–80 (2d Cir.1989); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co., Inc.*, 66 N.Y.2d 38, 45, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208 (1985) (third party's right to enforce contract generally upheld when no one other than third party can recover or language of the contract "clearly evidences an intent to permit enforcement by the third party").

■ Plaintiff argues that it is the intended third party beneficiary of the written authorization given by the guardian to MHT. This authorization letter reads in full:

You are authorized and requested at any time and from time to time without further approval by the undersigned to follow the written instructions of—

Toni Vallen—Valcorp Management Inc. to sell, deliver or exchange any securities or other property at any time held in my Custody Account, against receipt by you of such payment, securities or other property, as shall be set forth in such written instructions, and to follow such written instructions to receive or purchase with and to the extent of any cash to my credit with you as Custodian or with your Banking Department, or otherwise, and make payment therefor against receipt of the securities or other property to be acquired as set forth in such written instructions. This authorization shall continue in full force and effect until receipt by your Custody Department of written notice from me of the revocation thereof.

Even if we assume that this letter somehow constituted a contract, the clear purpose of the letter was for the guardian, pursuant to his duty to make investment decisions on behalf of the infants, to authorize the custodian of the accounts to follow the instructions of a particular financial advisor. It is entirely implausible that it was the intention of the parties to confer some benefit on a clearing broker acting on behalf of the brokerage firm where the financial advisor opened the accounts or that the parties intended the letter to create any rights enforceable by Viner.

There is also no basis in law or fact for plaintiff's negligence claims against MHT and H & C. Plaintiff contends that MHT and H & C negligently failed: to advise Vallen of the purported revocation of her authority, to recover copies of the trading authorizations from Vallen, and to advise plaintiff of the purported revocation of Vallen's authority. It is axiomatic that "[a] defendant may be held liable for negligence only when it breaches a duty owed to the plaintiff." *Strauss v. Belle Realty Co.*, 65 N.Y.2d 399, 402 (1985).

■ Plaintiff, the clearing broker, cannot establish that MHT owed it any duty. MHT's role in the events giving rise to this action appears confined to the ministerial act of refusing to pay plaintiff for the securities purchases after receiving instructions not to do so. Plaintiff offers no suggestion of a possible source of any duty, and there is no allegation that MHT even had any contact with plaintiff aside from the isolated transactions discussed above. Under the Surrogate Court's order, MHT was only to "comply with the directions of [the guardian]," and this Court has already determined that the order required MHT "to act simply as a custodian" and "imposed no independent obligation on MHT to review the financial merits of the guardian's decisions." *Haythe & Curley v. Victor M. Castelazo, Sr., et al.*, 88 Civ. 4740 (LBS) (S.D.N.Y. January 30, 1990) (memorandum endorsement).[1] The authori-

---

1. Counsel for MHT affirms that she forwarded a copy of this endorsement to plaintiff's counsel on February 15, 1990, along with copies of stipulations of discontinuance for what were apparently substantively similar claims asserted

zation letters given by the guardian to MHT merely directed MHT to follow the directions of Vallen to sell, deliver or exchange securities. That MHT, by accepting oral instructions from the son of the guardian, appears not to have complied with the terms of the written authorization given to MHT by the guardian does not help plaintiff establish that MHT owed it a duty.

■ Similarly, plaintiff cannot establish that H & C owed it a duty. Plaintiff's complaint alleges only that H & C acted as counsel to the guardian and alleges no additional facts from which the Court could infer that H & C had any relationship whatsoever with plaintiff. H & C's involvement in the transactions which form the basis for plaintiff's action appears to be limited to receiving copies of the broker's confirmations for possible use in preparing annual accountings filed by the guardian with the Surrogate's Court. Additionally, a partner of H & C was apparently present when the instructions to follow Vallen's written instructions were revoked. As with MHT, there is no indication that H & C had any other contact with plaintiff.

■ Plaintiff also seems to suggest that MHT and H & C negligently breached their duties to exercise control over Vallen or to warn plaintiff about her activities. A defendant is only liable for failing to control a third party when a "special relationship" exists between the defendant and the victim or the defendant and the third party. *Einhorn v. Seeley*, 136 A.D.2d 122, 525 N.Y.S.2d 212, 214–15 (1st Dep't), *appeal dismissed*, 72 N.Y.2d 914, 532 N.Y.S.2d 848, 529 N.E.2d 178 (1988). Similarly, absent a special relationship, there is no general duty to warn others of a foreseeable risk of harm even if one has knowledge of a risk that exists. *Andrulonis v. United States*, 724 F.Supp. 1421, 1485–86 (N.D.N.Y.1989). The relationships between employers and employees, owners and occupiers of premises, common carriers and their patrons, and hosts who serve alcoholic beverages to their guests have been found to

against MHT by other parties in a related case.

constitute special relationships. *Einhorn, supra* 525 N.Y.S.2d at 214–15.

■ There is no basis for finding that MHT had a "special relationship" with Vallen. There appears to be no authority which remotely supports the proposition that a bank acting simply as a custodian of certain accounts had some duty to control a financial advisor selected by the guardian, the only party charged with investing the money in the accounts, or to warn a potential victim with which it had had no prior contact of that financial advisor's fraud. While it is now apparent that "at some time" Vallen was "an officer or employee" of MHT, *see* Deposition of Nathan Hale at 5, neither plaintiff's complaint nor its initial motion papers demonstrated any awareness of this fact. More significantly, as plaintiff seems to concede, *see* Lowenthal Affidavit ¶ 4, Vallen was apparently not an employee or officer of MHT during the periods of time relevant to this action.

There is similarly no basis for finding that H & C had a "special relationship" with Vallen. Plaintiff attempts to premise a "special relationship" between H & C and Vallen upon deposition testimony to the effect that Vallen "had been a source of legal business, including the Castelazos, for H & C." *See* Hale Deposition at 6. However, there appears no basis in New York law for the proposition that a "source of legal business" has a special relationship with counsel such that a victim of the "source's" fraud with no relationship to counsel has a cause of action against counsel for failing to control the source or warn the victim.

Evidence that considerations other than the merits motivated counsel's decision to bring this action in state court came to light at oral argument. Presently in this Court, there are no less than nine cases arising from the same alleged securities fraud conspiracy, one of which was commenced by this plaintiff represented by different counsel. If this case were litigated in federal court, plaintiff would in all likelihood be faced with a motion under Fed.R. Civ.P. 42(a) to consolidate this case with

Arzt Affidavit ¶ 51.

the other actions. At oral argument, after informing the Court that he was a contingent fee litigator and that Viner's other counsel was paid on an hourly basis, counsel posed the rhetorical question: "How can I possibly inject myself into [these other actions]? Different lawyers, different deal, that's all." Transcript of Oral Argument dated April 5, 1990 at 21. Because Viner would not require two counsel if the actions were consolidated, there would probably not be a way for *counsel* to inject himself into the proceedings.

In light of these circumstances and the obvious lack of merit to plaintiff's claims, the Court can only conclude that MHT and H & C were joined solely to defeat diversity. Plaintiff's motion to remand this case to state court is denied, and the motions of MHT and H & C for summary judgment are granted.

The Court also grants defendants' motions for sanctions. Rule 11 sanctions are warranted "where it is clear that: (1) a reasonable inquiry into the basis for a pleading has not been made; (2) under existing precedents there is no chance of success; and (3) no reasonable argument has been advanced to extend, modify or reverse the law as it stands." *International Shipping Co. S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 563, 107 L.Ed.2d 558 (1989). The Court has determined that there was no basis under New York law for plaintiff's claims against MHT or H & C, and therefore, MHT and H & C are entitled to their costs. Defendants are directed to submit to the court by August 13, 1990 affidavits itemizing their costs. Plaintiff may submit responsive documents by August 27, 1990.

SO ORDERED.