Susan **CLARK** and Robert Clark, Jr., Plaintiffs,

v.

**ELI LILLY & COMPANY, The Abbott Laboratories, E.R. Squibb & Sons, Inc., The Upjohn Company, Burroughs Wellcome, Co., Merrell–Dow Pharmaceuticals, Inc., Premo Pharmaceuticals Laboratories, Inc. d/b/a Bio Research Services, Inc., Flint Laboratories, a subsidiary of Baxter–Travenol Laboratories, Inc., Boyle & Co., McNeilab, Inc., and Rexall Corporation, Defendants.**

No. 87–CV–1094.

United States District Court, N.D. New York.

Nov. 24, 1989.

Smyk & Smyk, Binghamton, N.Y. (Stephen Smyk, of counsel), Menter, Rudin & Trivelpiece, Syracuse, N.Y. (David Magnarelli, of counsel), for plaintiff.

Goodwin, Procter & Hoar, Boston, Mass. (Richard A. Oetheimer, of counsel), Greene,

Hershdorfer & Sharpe, Syracuse, N.Y. (Lorraine Rann, of counsel), for defendant Eli Lilly & Co.

Patterson, Belknap, Webb & Tyler, New York City (Robert Wilson, of counsel), Twining, Nemia, Hill & Steflik, Binghamton, N.Y., for defendants Abbott and McNeilab.

Phillips, Lytle, Hitchcock, Blaine & Huber, Buffalo, N.Y. (Alexander C. Cordes, of counsel), for defendant E.R. Squibb & Sons.

Sedwick, Detert, Moran & Arnold, New York City (David Covey, of counsel), for defendant Upjohn Co.

Lester, Schwab, Katz, & Dwyer, New York City (George Greene, of counsel), for defendant Burroughs Wellcome.

Hancock & Eastabrook, Syracuse, N.Y. (Janet Callahan, of counsel), for defendant Merrell Dow.

Chernin & Gold, Binghamton, N.Y. (Sanford P. Tanenhaus, of counsel), for defendant Premo Pharmaceuticals.

Hiscock & Barclay, Syracuse, N.Y. (Robert Barrer, of counsel), for defendant Flint Labs.

MacKenzie, Smith, Lewis, Michell, & Hughes, Syracuse, N.Y., for defendant Boyle.

Winthrop, Stimson, Putnam & Roberts, New York City (A. Edward Grashof, of counsel), for defendant Rexall.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

Susan and Robert Clark commenced this action to recover damages for injuries allegedly sustained as a result of Susan Clark's mother's alleged ingestion of diethystilbestrol ("DES") in 1954, while pregnant with Susan. Susan Clark claims that her *in utero* exposure to DES caused her to suffer various physical injuries. Her husband, Robert Clark, contends that because of the physical injuries which Susan

has sustained he has been deprived of his wife's love, companionship, society, consortium, and other services. Defendants E.R. Squibb & Sons, Rexall, Abbott Laboratories, McNeilab, Eli Lilly, and Upjohn have moved to dismiss Robert Clark's loss of consortium claim under Rule 12(b)(6) and for partial summary judgment with regard to this claim.[1] The court heard oral argument on this motion on October 6, 1989, in Syracuse, New York.

The only issue raised by the defendants' motions is whether under New York State law a spouse can recover for loss of consortium where the tortious conduct which gave rise to the loss of consortium claim occurred prior to the marriage. Although this question has not been frequently litigated in the New York courts, the courts that have addressed the question have uniformly held that a loss of consortium claim cannot be sustained where the tortious conduct occurred before the plaintiff married the injured person. *DuBois v. Community Hospital of Schoharie County, Inc.*, 150 A.D.2d 893, 540 N.Y.S.2d 917 (3d Dep't 1989); *Mehtani v. New York Life Insurance Co.*, 145 A.D.2d 90, 537 N.Y.S.2d 800 (1st Dep't 1989); *Briggs v. Julia Butterfield Memorial Hospital*, 104 A.D.2d 626, 479 N.Y.S.2d 758 (2d Dep't 1984); *Rademacher v. Torbensen*, 257 A.D. 91, 13 N.Y. S.2d 124 (4th Dep't 1939); *Anderson v. Eli Lilly & Co.*, No. 87–775, slip op. (Sup.Ct. 1988); *Wind v. Eli Lilly & Co.*, No. 86–19699, slip op. (Sup.Ct. March 29, 1989); *Miller v. Davis*, 107 Misc.2d 343, 433 N.Y. S.2d 974 (1980).

The parties do not dispute that Susan Clark's alleged *in utero* exposure to DES occurred prior to her marriage to plaintiff Robert Clark. Plaintiff attempts to distinguish the above cases, however, by arguing that unlike the present action "[e]ach of these cases involved personal injuries which had occurred prior to the marriage and were clearly evident and well known to both husband and wife prior to their marriage." (Plaintiff's Memorandum of Law,

---

**1.** Since matters outside the pleadings have been offered by the parties and considered by the court, the court has treated defendants' motion exclusively as one for partial summary judgment under Rule 56.

at p. 3). Accordingly, plaintiff contends that since his wife's injuries did not manifest until after their marriage, he did not enter the marriage "with his eyes wide open," (Plaintiff's Memorandum of Law, at p. 3–4), and therefore his loss of consortium claim is not precluded under New York law. The court disagrees with plaintiff's contention that all of the above cases can be distinguished on the basis which he claims. In only three of these cases, *Briggs, Wind,* and *Mehtani,* can it be determined from the stated facts that the plaintiff knew of the injury before marriage. Moreover, the *Wind* case appears to be the only case where the fact that the plaintiff knew of his spouse's injury before marriage was considered to be a relevant factor in the court's dismissal of the loss of consortium claim.[2]

The policy behind the New York rule seems to be that a third party should not be able to "create an *ex post facto* liability for loss of consortium where none existed before" simply by marrying an injured person. *Walsh v. Armstrong World Industries, Inc.,* 700 F.Supp. 783, 786 (S.D.N.Y. 1988). To some, this rule may seem unduly harsh where neither spouse is aware of even a possibility that injuries affecting the

quality of the marital and familial relationship would arise subsequent to the marriage. The courts of New York, however, have not focused on the spouses' pre-marital knowledge. On the contrary, with the exception of the *Wind* case, New York courts have focused solely on whether the tortious conduct preceded marriage. This court is bound by these decisions. Therefore, even if this court were to accept as true Robert Clark's statement that at the time of his marriage he believed that Susan was in good health, her reproductive system was normal, and any injuries which she had sustained as a result of her *in utero* exposure to DES had been resolved, (Robert Clark Affidavit, ¶ 4–5),[3] under applicable New York law plaintiff's loss of consortium claim must be dismissed nonetheless. Defendants' motion for partial summary judgment is therefore granted.

It is So Ordered.

---

[2] In *Wind,* plaintiff Janice Wind alleged that she was exposed *in utero* to DES in 1950 and as a result developed clear cell adenocarcinoma, requiring a radical hysterectomy in 1971. In 1983, Janice and Errol Wind were married. At the time of the marriage, plaintiff Errol Wind was fully aware of Janice's alleged prior injuries. Plaintiff sought recovery for loss of consortium. In dismissing this claim, the court concluded that since "Janice Wind's alleged inability to perform the assorted services and benefits referred to as 'consortium' ... were apparent at the time of her marriage to Errol Wind," and "[i]nasmuch as Errol Wind was not married to Janice Wind at the time the latent effects became manifest, he may not maintain an action for damages for loss of consortium." *Wind,* No. 86–19699, Slip Opinion (Sup.Ct. Mar 29, 1989).

The other New York decisions simply do not support plaintiff's position. For example, in *Rademacher v. Torbenson,* which is the first reported New York opinion on the present issue, the court held that

[i]f at the time of his subsequent marriage, plaintiff's wife was disabled as a result of a previous negligent act by the defendant, the plaintiff took her as his wife in her then

existing state of health and thus assumed any deprivation resulting from such disability. By then undertaking the legal obligations which marriage imposes upon a husband in favor of his wife, he assumed the cost of her medical care after marriage.

257 A.D. at 91, 13 N.Y.S.2d at 124. Because the court did not specify the nature of the woman's disability, it can not be determined whether the plaintiff was aware of her disability at the time of their marriage.

[3] The deposition of Susan Clark, which was submitted by defendants in support of their motion, indicates, however, that Robert Clark was aware prior to marriage that his wife could develop physical problems as a result of her exposure to DES. In response to the question of what she told her husband regarding her exposure to DES, Susan Clark stated, "I told him that there was the *possibility* that I would be infertile and I told him there was the *possibility* that I could have health problems as a result of my in utero exposure to Diethylstilbestrol." (Deposition of Susan Clark, March 22, 1989, at p. 20) (emphasis added). She further stated that she "definitely" informed Robert of this possibility before they were married.