**John D. ADAMS and Jeanette S. Adams, Husband and Wife, Plaintiffs,**

v.

**NEW ROCHELLE HOSPITAL MEDICAL CENTER, John J. Zellinger, M.D. and the Estate of Arthur J. Mannix, Jr., M.D. (deceased), Defendants.**

No. 95 Civ. 3357 (WCC).

United States District Court, S.D. New York.

March 25, 1996.

Law Offices of Donald R. Heiner, Ridge-field Park, New Jersey, for Plaintiffs (Donald R. Heiner, of counsel).

Nixon, Hargrave, Devans & Doyle, L.L.P., Garden City, New York, for Defendants (Betsy R. Mantell, of counsel).

### OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiffs John and Jeanette Adams (husband and wife) commenced this diversity action against defendants New Rochelle Hospital Medical Center ("New Rochelle"), John J. Zellinger, M.D. ("Dr. Zellinger") and The Estate of Arthur J. Mannix, Jr., M.D. (deceased) ("Estate of Mannix") alleging that Mr. Adams suffered injury in or about July 1994 from a surgical sponge he claims was negligently left in his body during a surgical procedure he underwent at New Rochelle in or about December 1950. Ms. Adams asserts a claim for loss of consortium in connection with her husband's injury.

Defendants have moved for dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants argue that dismissal is warranted because (1) the action is

time-barred and (2) Ms. Adams cannot recover for loss of consortium because she was not married to Mr. Adams at the time of the alleged injury. For the reasons discussed below, defendants' motion is denied in part and granted in part.

## DISCUSSION

On a motion to dismiss, we draw all reasonable inferences in favor of plaintiffs, and accept as true all factual allegations in the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Ortiz v. Cornetta,* 867 F.2d 146, 149 (2d Cir.1989). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if it appears beyond doubt that plaintiffs can prove no set of facts entitling them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985).

Mr. Adams alleges that on or about December 29, 1950, New Rochelle, by Drs. Zellinger and Mannix, performed on him a right lumbar sympathectomy and, subsequently, during the same period in the winter of 1950/1951, a left lumbar sympathectomy. Mr. Adams claims that during one or both of these operations, one or more surgical lap sponges were negligently left inside him by defendants. Mr. Adams alleges that these one or more sponges rendered him ill in July 1994, and that this alleged illness required hospitalization and surgery in July 1994. The Adamses allege that they were married at the time the sponges were discovered and removed in July 1994, but not when the sponges allegedly were left in 1950.

## I. Statute of Limitations

Neither party disputes that New York law governs this diversity action. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Although Mr. Adams is an out-of-state resident, he claims injury from alleged malpractice in New York. We therefore look to New York law to determine the applicable statute of limitations in a foreign object malpractice action. *Hoelzer v. City of Stamford, Conn.,* 933 F.2d 1131, 1136 (2d Cir.1991); *Yosef v. Passamaquoddy Tribe,* 876 F.2d 283, 287 (2d Cir.1989), *cert. denied,* 494 U.S. 1028, 110

S.Ct. 1474, 108 L.Ed.2d 611 (1990); *Morse v. Elmira Country Club,* 752 F.2d 35, 37 (2d Cir.1984).

Under New York law, the general rule is that a cause of action for malpractice accrues at the time the alleged conduct occurred. *See* N.Y.Civ.Prac.L. & R. 214–a (McKinney 1990); *Davis v. City of New York,* 38 N.Y.2d 257, 379 N.Y.S.2d 721, 723, 342 N.E.2d 516, 517 (1975). Under this rule, plaintiffs' action would be time-barred because the alleged injury occurred during the winter of 1950/1951, more than two years and six months prior to the filing of this action. However, section 214–a of the New York CPLR provides an exception to the general rule for malpractice actions based on foreign objects left in the body: "[W]here the action is based upon the discovery of a foreign object in the body of the patient, the action may be commenced within one year of the date of such discovery or of the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier." N.Y.Civ.Prac.L. & R. 214–a. Based on this exception, known as the "discovery rule," plaintiffs' action would be timely because Mr. Adams alleges that he discovered in July 1994 that surgical sponges were left in his body, and he filed this action prior to July 1995. Defendants do not dispute that a surgical sponge constitutes a "foreign object" for the purpose of the discovery rule.

Defendants argue that the New York discovery statute, N.Y.Civ.Prac.L. & R. 214–a, enacted in 1969, does not apply to malpractice occurring prior to July 1, 1975. *See Maresca v. Berson,* 84 A.D.2d 760, 443 N.Y.S.2d 770, 771 (1981) ("Whether the three-year limitation period contained in subdivision 6 of CPLR 214, or the two years and six months period contained in CPLR 214–a (L.1975, ch. 109) is applicable may be resolved only by a determination as to whether the malpractice occurred before or after July 1, 1975 (L.1975, ch. 109, § 37)."); 1 WEINSTEIN–KORN–MILLER, NEW YORK CIVIL PRACTICE ¶ 2.14–a.02 (1996). However, defendants concede that, even prior to codification of the New York discovery rule, the New York Court of Appeals had fashioned a similar discovery rule in *Flana-*

gan v. Mount Eden General Hosp., 24 N.Y.2d 427, 301 N.Y.S.2d 23, 248 N.E.2d 871 (1969). See also Goldsmith v. Howmedica, Inc., 67 N.Y.2d 120, 500 N.Y.S.2d 640, 641, 491 N.E.2d 1097, 1098 (1986).

In Flanagan, the New York Court of Appeals squarely addressed the question "when should the Statute of Limitations begin to run in a foreign object medical malpractice case?" Flanagan v. Mount Eden General Hosp., 24 N.Y.2d 427, 301 N.Y.S.2d 23, 25, 248 N.E.2d 871, 872 (1969). In Flanagan, the plaintiff was under the care of the defendant for a gall bladder ailment, and underwent surgery in July 1958. 301 N.Y.S.2d at 24, 248 N.E.2d at 871. During the course of the operation, surgical clamps were inserted in the plaintiff's body. Id. Eight years later, in the spring of 1966, after experiencing pain in her abdomen, plaintiff discovered through X-rays that surgical clamps were lodged in her body. Id. In June 1966, an operation was performed to remove the clamps. Id. In this landmark case, the New York Court of Appeals held that the statute of limitations in a foreign object malpractice case begins to accrue when the patient reasonably could have discovered the malpractice, not when the allegedly negligent act occurred. Id., at 27, 248 N.E.2d at 873. In its discussion, the court tried to reconcile the competing policy objectives underlying the statute of limitations and the narrowly drawn exception which tolled accrual of the limitations period in foreign object actions:

> It is clear now that a fundamental difference exists, for the purpose of the Statute of Limitations, between negligent medical treatment and medication cases and cases involving negligent malpractice of physicians or hospitals in which a foreign object is left in a patient's body. In the latter no claim can be made that the patient's action may be feigned or frivolous. In addition, there is no possible causal break between the negligence of the doctor or hospital and the patient's injury.
> *The so-called discovery rule employed in foreign object medical malpractice cases is in compatible harmony with the purpose for which Statutes of Limitation were enacted and strikes a fair balance in* the field of medical malpractice. The unsoundness of the traditional rule, as applied in the case where an object is discovered in the plaintiff's body, is patent. "It simply places an undue strain upon common sense, reality, logic and simple justice to say that a cause of action had 'accrued' to the plaintiff until the X-ray examination disclosed a foreign object within her abdomen and until she had reasonable basis for believing or reasonable means of ascertaining that the foreign object was within her abdomen as a consequence of the negligent performance of the [operation]." [citing Morgan v. Grace Hosp., 149 W.Va. 783, 792, 144 S.E.2d 156, 161 (W.Va.1965) ].

Flanagan, 301 N.Y.S.2d at 26, 248 N.E.2d at 872–73 (emphasis added).

Defendants attempt to distinguish Flanagan by first suggesting that that court was directing its ruling exclusively to the New York statute of limitations existing at that time. See Mem. of Law in Support of Defendants' Motion to Dismiss ("Def.Mem. of Law"), at 4 ("Flanagan was based upon CPLR § 214 subd. 6 which was effective September 1, 1963."). Defendants then argue that, under a recent New York Court of Appeals decision, Rockefeller v. Moront, 81 N.Y.2d 560, 601 N.Y.S.2d 86, 618 N.E.2d 119 (1993), the timeliness of an action is governed by the statute of limitations and decisional law in effect at the time the malpractice occurred. Def.Mem. of Law, at 5. Defendants argue that we should look to the limitations rule in effect at the time the alleged malpractice occurred (i.e., 1950) in determining whether to apply the discovery rule. Under the applicable statute of limitations in 1950, according to defendants, an action for malpractice accrued at the time of the injury, and there was no exception tolling the limitations period for foreign objects until discovery.

As a preliminary matter, in no way did the Flanagan court hold, as defendants would have us conclude, that the discovery rule was to apply only to cases where the alleged tortious act occurred after enactment of the New York statutory limitations period in existence at that time. Defendants' argument that Flanagan should be limited to

post–1963 alleged malpractice is absurd.[1] To see the absurdity of defendants' suggestion, one need look no farther than the facts of *Flanagan* itself: The alleged malpractice in *Flanagan* occurred in 1958. 301 N.Y.S.2d at 24, 248 N.E.2d at 871. Therefore, *Flanagan* could not have been limiting its holding to actions arising out of tortious conduct occurring after the enactment of the then existing statute of limitations.

Defendants' reliance on *Rockefeller v. Moront*, 81 N.Y.2d 560, 601 N.Y.S.2d 86, 88 n. 2, 618 N.E.2d 119, 121 n. 2 (1993), is misplaced. In *Rockefeller*, the New York Court of Appeals simply held that misplaced sutures did not qualify as "foreign objects" for the purpose of the discovery rule enunciated in *Flanagan*. The court never stated or implied, as defendants would have us conclude, that the discovery rule enunciated in *Flanagan* is limited to foreign object actions arising out of alleged malpractice which occurred after 1963 (which defendants claim is when the statute of limitations relevant in *Flanagan* was enacted). Defendants misconstrue the significance of footnote 2, wherein the court stated that, because the alleged malpractice occurred in 1971, plaintiff's action was not governed by the two years and six months limitations period of CPLR 214–a (which controlled medical malpractice occurring on or after July 1, 1975), but rather the three-year limitations period as set forth in CPLR 214(6) (the rule prior to enactment of CPLR 214–a). The court was determining the length of the limitations period. Our task here, in contrast, is to determine when the limitations period begins to run. Under *Flanagan*, the applicable limitations period begins to run at the date of discovery (or of facts which would reasonably lead to such discovery) of the foreign object. *Rockefeller* does not in any way limit *Flanagan*'s holding. In fact, *Rockefeller* discusses *Flanagan* favorably, without in any way diminishing its scope:

> The "foreign object" rule, first enunciated by this Court in *Flanagan* ... provides an exception to th[e] general principle [that

the limitations period for medical malpractice actions generally runs from the date of the last act constituting the basis of the claim], where an object not intended to remain is negligently "*left* in a patient's body" after the completion of a medical procedure.... In such instances, the applicable limitations period will not commence to run "until the patient could have reasonably discovered the malpractice" ... We stated in *Flanagan* that, unlike in cases where the plaintiff's malpractice claim is predicated on negligent "medical treatment" or practice ... application of a discovery rule is justified in foreign object cases because the presence of the foreign object—in that case, surgical clamps forgotten in the plaintiff's body after surgery—did not create a danger of false or belated claims, did not "raise questions as to credibility," and did not "rest on professional diagnostic judgment or discretion...."

*Rockefeller v. Moront*, 81 N.Y.2d 560, 601 N.Y.S.2d 86, 88, 618 N.E.2d 119, 121 (1993). We therefore conclude that *Rockefeller* in no way limits application of the discovery rule enunciated in *Flanagan*. In short, we are aware of, and defendants have identified, no statute or case law in New York which in any way supersedes or overrules the New York Court of Appeals decision in *Flanagan*.

Finally, defendants argue that the purpose of statutes of limitations favors dismissal:

> The policy of repose behind the statute of limitations protects defendants by "preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared."

*Meyer v. Frank*, 550 F.2d 726, 730 (2d Cir.), *cert. denied*, 434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 90 (1977) (quoting *Order of R.R. Telegraphers v. Ry. Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88

---

1. Defendants argue that *Flanagan* addressed the CPLR existing at the time the case was decided (which they claim had been enacted in 1963), and that any limitations existing prior to 1963, either by statute or in the case law, therefore should be unaffected by the discovery rule enunciated in *Flanagan*.

L.Ed. 788 (1944)). We agree with the general principle that statutes of limitations serve legitimate and important functions in our judicial system. However, the need in certain cases to carve out an exception to rules governing limitations is equally compelling.

Defendants argue that (1) there was a lapse of approximately forty-five years between the alleged act or acts of malpractice and the commencement of the litigation; (2) defendants cannot test the veracity of Mr. Adams's claim that he did in fact undergo surgery at New Rochelle in 1950 because defendants purportedly have no records of the surgery Mr. Adams alleges he underwent; and (3) potential witnesses, like Dr. Mannix, now deceased, cannot be located or have no recollection of events so long ago. Defendants also argue that defendants are prejudiced by the delay in bringing this action because it is impossible to discern who defendants' insurer or insurers were in 1950, although defendants claim that they "certainly carried insurance in 1950." Def.Mem. of Law, at 7. The concerns expressed by defendants are unremarkable. The New York Court of Appeals considered these issues in *Flanagan*, and held that such concerns, which indeed underlie the purpose of statutes of limitations, are less compelling in a foreign object malpractice case:

> In the case before us, the danger of belated, false or frivolous claims is eliminated. In addition, plaintiff's claim does not raise questions as to credibility nor does it rest on professional diagnostic judgment or discretion. It rests solely on the presence of a foreign object within her abdomen.
>
> The policy of insulating defendants from the burden of defending stale claims brought by a party who, with reasonable diligence, could have instituted the action more expeditiously is not a convincing justification for the harsh consequences resulting from applying the same concept of accrual in foreign object cases as is applied in medical treatment cases. A clamp, though immersed within the patient's body and undiscovered for a long period of time, retains its identity so that a defendant's ability to defend a "stale" claim is not unduly impaired.

*Flanagan*, 301 N.Y.S.2d at 26–27, 248 N.E.2d at 873. In the instant case, Mr. Adams alleges that he discovered that surgical sponges were left in his body during one or two operations some forty-five years ago. Clearly, there will be issues of fact that may be more difficult to prove or disprove because of the passage of time and the fading memory of witnesses. However, this claim does not rest on professional diagnostic judgment or discretion. "It rests solely on the presence of a foreign object within [Mr. Adams's body]." *Flanagan*, 301 N.Y.S.2d at 26, 248 N.E.2d at 873. Assuming for the purpose of this motion that Mr. Adams reasonably could not have discovered the foreign object earlier than he did, as articulated in *Flanagan*, he should not lose his claim just because he was unable to detect defendants' alleged malpractice until many years after his operations. We will not upset the balance struck by the New York Court of Appeals in *Flanagan* and its progeny.

## II. Loss of Consortium

■ Ms. Adams's claim for loss of consortium must be dismissed. Under New York law, "a claim for loss of consortium is not permitted unless the ... spouse was married to the injured person at the time of the actionable conduct." *Du Bois v. Community Hosp. of Schoharie County, Inc.*, 150 A.D.2d 893, 540 N.Y.S.2d 917, 918 (1989). *See also Clark v. Eli Lilly & Co.*, 725 F.Supp. 130, 132 (N.D.N.Y.1989) (New York courts uniformly have held that a loss of consortium claim cannot be sustained where the conduct on which the claim is based occurred before marriage); *Mehtani v. New York Life Ins. Co.*, 145 A.D.2d 90, 537 N.Y.S.2d 800, 804 ("[D]amages for loss of consortium are not recoverable where ... the alleged wrongful conduct preceded the marriage."); *appeal dismissed in part, denied in part*, 74 N.Y.2d 835, 546 N.Y.S.2d 341, 545 N.E.2d 631 (1989); *Briggs v. Julia L. Butterfield Memorial Hosp.*, 104 A.D.2d 626, 479 N.Y.S.2d 758, 758 (1984) ("An action for loss of consortium cannot be maintained unless the plaintiff was married to the injured person at the time of the actionable conduct.").

Recently the Second Circuit Court of Appeals certified a question related to this issue to the New York Court of Appeals.

Under settled New York law, because consortium represents each marital partner's interest in the continuance of the marital relationship as it existed at the *inception* of the marriage, a loss of consortium cause of action by the spouse of an injured person "does not lie if the alleged tortious conduct and resultant injuries occurred prior to the marriage" [citing *Anderson v. Eli Lilly & Co.,* 79 N.Y.2d 797, 580 N.Y.S.2d 168, 588 N.E.2d 66 (1991) ]. The United States Court of Appeals for the Second Circuit has certified a question to us regarding the application of that principle to a case where a toxic substance was introduced into the injured person's body before the marriage, but did not bring about the onset of a particular disease until many years after the marital relationship began. . . .

We answer the certified question in the negative.

*Consorti v. Owens–Corning Fiberglas Corp.,* 86 N.Y.2d 449, 634 N.Y.S.2d 18, 657 N.E.2d 1301 (1995). Therefore, under *Consorti,* a spouse cannot recover on a claim for loss of consortium based on tortious conduct occurring prior to marriage. Plaintiffs' attempt to distinguish *Consorti* is unavailing. Plaintiffs argue that *Consorti*'s bar on loss of consortium claims arising out of pre-marital tortious acts does not apply to the instant case. The thrust of their argument is that *Consorti* (a toxic ingestion case) and the instant case (a foreign object case) are governed by different statutes of limitations; a toxic ingestion case accrues upon ingestion and a foreign object case accrues upon discovery of the foreign object. However, we see no reason why *Consorti*'s analysis with respect to a claim for loss of consortium should not apply to both types of cases.

The allegedly tortious conduct in the present case occurred during the winter of 1950/1951 when the surgical sponges were left in Mr. Adams's body. Plaintiffs concede that they were not married as early as 1950 or 1951 when the alleged malpractice occurred. We are bound by New York decisions which clearly provide that a spouse

cannot recover for loss of consortium based on pre-marital tortious conduct.

To some, this rule may seem unduly harsh where neither spouse is aware of even a possibility that injuries affecting the quality of the marital and familial relationship would arise subsequent to the marriage. The courts of New York, however, have not focused on the spouses' pre-marital knowledge. On the contrary, with the exception of [one New York Supreme Court] case, New York courts have focused solely on whether the tortious conduct preceded marriage. This court is bound by these decisions.

*Clark,* 725 F.Supp. at 132. Plaintiffs' attempt to distinguish overwhelming New York authority providing that a claim for loss of consortium must arise out of tortious conduct during the marriage is of no avail. We therefore hold that a spouse cannot recover for loss of consortium based on a foreign object left in a patient's body prior to marriage.

*CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss is denied as to Mr. Adams's claim for malpractice, and granted as to Ms. Adams's claim for loss of consortium.

SO ORDERED.