■ ALLISON BRIGGS et al., Appellants, v JULIA L. BUTTERFIELD MEMORIAL HOSPITAL et al., Respondents. — In a medical malpractice action to recover damages for personal injuries, etc., the plaintiffs appeal from two orders of the Supreme Court, Dutchess County (Martin, J.), both entered March 29, 1983, which granted the defendants' motions to dismiss the plaintiff Thomas Briggs' fourth cause of action for loss of consortium.

Orders affirmed, with one bill of costs payable to Giampe, O'Daley and Wolfe, P. C., M.L. Giampe, M.D. and Lewis Wolfe, M.D.

On or about June 5, 1979, defendant doctors Giampe and Wolfe performed a tubal ligation on plaintiff Allison Briggs. It is alleged that, during the course of the operation, they negligently punctured plaintiff Allison Briggs' iliac vessel, causing her to go into cardiac arrest and to suffer severe and permanent injuries.

Plaintiffs commenced this action against the doctors and hospital by service of a summons and verified complaint on January 21, 1981. As a fourth cause of action, plaintiff Thomas Briggs sought recovery for loss of services and/or consortium. The complaint alleged that "[a]t all times hereinafter mentioned, the plaintiff, THOMAS BRIGGS was and still is the lawful husband of the plaintiff, ALLISON BRIGGS". However, during Allison Briggs' pretrial examination, she stated that she and Thomas Briggs were not married until October 14, 1981.

The essence of recovery for loss of services is to compensate for the loss of such elements as "love, companionship, affection, society, sexual relations, solace and more" (*Millington v Southeastern Elevator Co.,* 22 NY2d 498, 502).

An action for loss of consortium cannot be maintained unless the plaintiff was married to the injured person at the time of the actionable conduct (*Rademacher v Torbensen,* 257 App Div 91; *Miller v Davis,* 107 Misc 2d 343). We note that in virtually every jurisdiction of the United States, a lawful marriage at the time the claim arises is a prerequisite to recovery for loss of services (see, e.g., *Weaver v Searle & Co.,* 558 F Supp 720; *Laws v Griep,* 332 NW2d 339 [Iowa]; *Tremblay v Carter,* 390 So 2d 816 [Fla App]; *Sostock v Reiss,* 92 Ill App 3d 200; *Angelet v Shivar,* 602 SW2d 185 [Ky]).

Accordingly, the cause of action for loss of consortium was properly dismissed. O'Connor, J. P., Boyers and Eiber, JJ., concur.

Brown, J., concurs in the result, with the following memorandum: The plaintiffs herein had been living together continuously for some seven years prior to the occurrence of the conduct

upon which this medical malpractice action is based. Three children were born of their relationship. They were not married, however, until October 14, 1981 — nearly two and one-half years after the alleged malpractice. While, as noted by the majority, it has long been the rule in this and most other States that a derivative action for loss of consortium cannot be maintained unless the individual asserting the cause of action was lawfully married to the injured party at the time the cause of action accrued (*Rademacher v Torbensen,* 257 App Div 91), it is, nonetheless, apparent to me that where the cohabitants have maintained a long-term stable relationship and reared a family together, a physical injury to one party results in no less a loss of "love, companionship, affection, society, sexual relations, [and] solace" (*Millington v Southeastern Elevator Co.,* 22 NY2d 498, 502) as is suffered by one party to a legally constituted marriage as a consequence of an injury to the other. At least one court in California has held that a cause of action for loss of consortium should be recognized in such circumstances (*Butcher v Superior Ct.,* 139 Cal App 3d 58; contra *Hendrix v General Motors Corp.,* 146 Cal App 3d 296). However, as sympathetic as I am to plaintiff husband's argument under the facts of this case, as recently pointed out by the Court of Appeals in rejecting an expansion of liability in this area to encompass the loss of consortium on the part of an injured party's children, "A line must be drawn between the competing policy considerations of providing a remedy to everyone who is injured and of extending exposure to tort liability almost without limit. It is always tempting, especially when symmetry and sympathy would so seem to be best served, to impose new duties, and, concomitantly, liabilities, regardless of the economic and social burden. But, absent legislative intervention, the fixing of the 'orbit' of duty, as here, in the end is the responsibility of the courts (see *Palsgraf v Long Is. R. R. Co.,* 248 NY 339, 343, 345)" (*De Angelis v Lutheran Med. Center,* 58 NY2d 1053, 1055).

Similarly here, there are sound public policy considerations which weigh in favor of limiting a tort-feasor's liability for loss of consortium claims to cases of an injured party's lawful spouse. While in certain cases — such as the one at bar — such relationships may bear the indicia of a lawful marriage, obviously other cohabiting parties may be involved in less stable relationships of, perhaps, shorter duration. A line must be drawn somewhere, however, and absent a legislative dictate to the contrary, the existence of a valid marriage relationship is not an unreasonable place to draw that line.