**Sandra WALSH, Individually and as Executrix of the Estate of John Walsh, Deceased, Plaintiff,**

v.

**ARMSTRONG WORLD INDUSTRIES, INC., et al., Defendants.**

**No. CV 87–2593.**

United States District Court, S.D. New York.

Dec. 6, 1988.

Perry Weitz, Eisen & Weitz, New York City, for plaintiff.

Patrick Wilkinson, Goeller & Modessit, Nara Haute, Ind., for defendants.

## MEMORANDUM AND ORDER

DEARIE, District Judge.[*]

In February, 1988, while this action was pending, John Walsh, then a plaintiff herein, died, allegedly as a result of his prior occupational exposure to asbestos. His widow, Sandra Walsh, continued the action in her own behalf and as executrix of his estate. John Walsh's last exposure to asbestos occurred long before his 1984 marriage to Sandra; indeed, when the Walshes married, John already suffered from the allegedly asbestos-related fibrosis of the lung that ultimately claimed his life. These undisputed facts form the basis for several applications, made orally during the jury trial of this action by Celotex Corp.—the sole remaining defendant—seeking to limit the causes of action and elements of damages that Mrs. Walsh may pursue.[1]

Two distinct causes of action are pressed in this lawsuit. The first is John Walsh's claim for personal injuries, which survives his death and may be pursued by Sandra Walsh as her husband's personal representative. N.Y. Estates, Powers & Trusts Law ("EPTL") § 11–3.2(b) (McKinney 1988 Supp.). The second is Sandra Walsh's claim for pecuniary damages resulting from John Walsh's wrongful death. Sandra Walsh is entitled to bring the wrongful death action because she is the decedent's personal representative; her entitlement to recover wrongful death damages stems from her status as the sole distributee of the estate. EPTL §§ 5–4.1 to 5–4.4 (McKinney 1981 & 1988 Supp.). Defendant contends (1) that damages for loss of consortium resulting from wrongful death are not compensable; (2) that Mrs. Walsh may not seek damages for, or maintain a separate cause of action for, loss of consortium during her husband's lifetime, because they were not married at the time his personal injury claim accrued; and (3) that, for the same reason, Mrs. Walsh should be precluded from pursuing any wrongful death claim.

■ Under New York law, which governs this lawsuit, defendant's first contention is clearly correct. In *Liff v. Schildkrout*, 49 N.Y.2d 622, 633–34, 427 N.Y.S.2d 746, 749–50, 404 N.E.2d 1288, 1291–92 (1980), the New York Court of Appeals construed the statutory limitation of wrongful death damages to "pecuniary injuries," EPTL § 5–4.3, to exclude loss of consortium damages. The *Liff* court also rejected plaintiffs' argument that the common law would permit an action for loss of consortium resulting from wrongful death. 49 N.Y.2d at 631–33, 427 N.Y.S.2d at 748–49, 404 N.E.2d at 1290–92. Thus, Mrs. Walsh may not recover damages for loss of consortium resulting from Mr. Walsh's untimely demise.

■ *Liff* did recognize, however, that just as a tortiously injured decedent's personal injury claim survives the death, so does the spouse's derivative claim for loss of consortium during the decedent's lifetime. However, that derivative claim is available only to a spouse who is married to the injured party at the time of the injury. *Briggs v. Julia L. Butterfield Mem. Hosp.*, 104 A.D.2d 626, 479 N.Y.S.2d 758 (2d Dep't 1984); *Rademacher v. Torbensen*, 257 A.D. 91, 13 N.Y.S.2d 124 (4th Dep't 1939) (per curiam); *Miller v. Davis*, 107 Misc.2d 343, 433 N.Y.S.2d 974 (Sup.Ct. Schoharie Cty.1980); *see Einhorn v. Seeley*, 136 A.D.2d 122, 525 N.Y.S.2d 212, 216–17 (1st Dep't 1988) (Kassal, J., dissenting in part). Defendant correctly argues that current New York law would not support

---

[*] The Honorable Raymond J. Dearie, United States District Judge for the Eastern District of New York, sitting by designation in the Southern District of New York.

1. Although these applications do not comply with the filing requirements of Fed.R.Civ.P. 56(c), they are, in effect, motions for partial summary judgment, and the Court treats them as such. The Court would in any event be compelled to decide the issues raised by defendant in the course of preparing instructions to the jury.

Mrs. Walsh's claim for loss of consortium during the period her husband was alive.

■ Plaintiff responds that when the Legislature permitted revival of previously barred claims for asbestos exposure, N.Y. Laws 1986, Ch. 682 § 4, it created a new cause of action that "accrued" on the effective date of the act, by which time the Walshes were married, thus making Mrs. Walsh eligible to recover loss of consortium damages. The statute, however, is explicit: it did not create new causes of action but rather permitted renewal of previously barred claims. Nor does the simultaneous enactment of a new statute of limitations for so-called "toxic torts," N.Y. Civ.Prac.Law & Rules ("CPLR") § 214-c (McKinney Supp.1988), make loss of consortium damages available to Mrs. Walsh. That section abrogated the New York Court of Appeals' "ancient doctrine that in tort cases the statute of limitations runs from the date the injury is inflicted, regardless of when the injury is actually discovered." McLaughlin, Practice Commentary to CPLR § 214-c; *see Steinhardt v. Johns-Manville Corp.*, 54 N.Y.2d 1008, 446 N.Y. S.2d 244, 430 N.E.2d 1297 (1981), *appeal dism'd, cert. denied*, 456 U.S. 967, 102 S.Ct. 2226, 72 L.Ed.2d 840 (1982). Under the new statute, the limitations period in latent injury cases runs from the time the injury is or should be discovered. In this case, there is no dispute that John Walsh was disabled when he and Sandra were married, and that Sandra knew of that illness and disability. A spouse who married a victim of toxic exposure after exposure, but during the latency period of the disease, should perhaps be entitled to recover for loss of consortium; the "discovery rule," however, does not affect the principle that a spouse may not recover loss of consortium damages for injury that is manifest at the time of marriage. *See*

*Rademacher, supra*, 257 A.D. at 91, 13 N.Y.S.2d at 124.

The *Rademacher* rule makes a degree of sense when applied to the spouse of someone who, before the marriage, has suffered a disabling injury causing a generally static condition, such as a serious trauma without further complications. The injured party's inability to provide the bundle of services and benefits referred to as "consortium," *see Millington v. Southeastern Elevator Co., Inc.*, 22 N.Y.2d 498, 293 N.Y.S.2d 305, 239 N.E.2d 897 (1968), is apparent at the time of marriage; the spouse never has any consortium to lose, nor any expectation of consortium. By contrast, as Mrs. Walsh eloquently testified, where at the time of marriage the injured party is in the relatively early stages of a progressive disease, both the quality and quantity of consortium decrease with time; the spouse suffers a real and tortiously inflicted loss. The Court therefore has misgivings about applying the *Rademacher* rule to a case such as this. However, given the consistency and rigidity [2] with which New York courts have applied *Rademacher*, this Court cannot conclude that a New York court would modify the rule to allow Mrs. Walsh to recover for loss of consortium. Therefore, the complaint is dismissed to the extent that it asserts a claim for loss of consortium deriving from John Walsh's claim for personal injury.

■ Defendant urges that the *Rademacher* and *Briggs* cases also compel the dismissal of Mrs. Walsh's wrongful death action. The Court disagrees.

The New York Court of Appeals decided, in *Radley v. Le Ray Paper Co.*, 214 N.Y. 32, 108 N.E. 86 (1915), that a decedent's wife, who married him after the tortious infliction of a lethal injury, could recover her pecuniary damages under the wrongful

---

**2.** In *Miller,* the injury took place just hours before the plaintiffs were to be married, and the wedding in fact occurred in the hospital just one day after the accident. Notwithstanding the engagement and the mere fortuity that the accident took place before the ceremony instead of after, the court refused to relax the rule.

In *Briggs*, plaintiffs had lived together in a stable, long-term relationship for seven years,

and had had three children, before the tort was committed. Justice Brown, concurring in the result, conceded that the injured party's spouse suffered a real loss of consortium, but held that absent a "legally constituted marriage" in existence at the time of the injury, the loss, however real, was not legally cognizable.

death statute. In addition, for purposes of calculating damages, the court held that the appropriate measure of decedent's life expectancy was the length of time he would have lived had he not been injured, not his life expectancy at the time he was married. Defendant concedes that *Radley* has never been overruled [3] but urges that modern New York law, as evidenced by *Briggs,* effectively disavows *Radley.* However, the issues raised by *Radley* and *Briggs* are quite different, and there are sound jurisprudential reasons why plaintiffs in Mrs. Walsh's position should be allowed to maintain wrongful death actions even if they may not bring suit for loss of consortium.

The basic concern of *Rademacher, Briggs* and *Miller* is that one should not be able to "marry a lawsuit." At its core, the *Rademacher* rule is a twist on the famous "thin skull rule" of tort law: you take your spouse as you find him or her. When an unmarried person is tortiously injured, the liability created is limited to the damages recoverable by that person for personal injury. The courts have refused to allow third parties, by their voluntary act of marriage to the injured person, to in effect create an *ex post facto* liability for loss of consortium where none had existed before.[4]

By contrast, the wrongful death statute creates a liability where the common law had illogically rejected liability, that is, in cases where a tortfeasor caused death instead of mere injury. *Liff, supra.* Although defendant repeatedly says that Mrs. Walsh, because she married Mr.

Walsh after the onset of his illness, is not his "spouse" within the meaning of the wrongful death statute, the current version of that statute [5] has but two requirements that might affect Mrs. Walsh's status: first, it allows only the decedent's "personal representative, duly appointed" to maintain the action, EPTL § 5–4.1 subd. 1 (McKinney Supp.1988), and second, it allows distribution of wrongful death damages "exclusively for the benefit of the decedent's distributees", *id.* § 5–4.4(a) (McKinney 1981). Mrs. Walsh satisfies both these requirements, and the statute does not require that she satisfied them at the time Mr. Walsh was injured.

Of course, one's status as "personal representative" of the deceased generally arises only at or after the time of death, so it would make no sense to read into the statute a requirement that the party plaintiff be the decedent's personal representative at the time of the injury. Nor does it make sense to limit recovery only to those who are distributees at the time of the injury. The losses compensable under the wrongful death statute, *id.* § 5–4.3(a) (McKinney Supp.1988), including, for instance, funeral expenses, are incurred by the distributees as a result of their relationship to the decedent at the time of death, and are compensable regardless of when that relationship arose.[6]

To be more precise, the *cause of action* for wrongful death arises entirely out of the tort committed against the decedent, unlike the derivative cause of action for

**3.** In *Murmann v. New York, N.H. & H.R. Co.,* 233 A.D. 446, 253 N.Y.S. 450 (2d Dep't 1931), the Court said it was "well settled" that a wrongful death action could be maintained by a spouse who married the decedent after the accident. This is the only later case in New York, referring to this aspect of *Radley,* that the Court's research has disclosed.

**4.** The *Briggs* court also evinced concern for the need to define and limit the types of relationships in which loss of consortium would be compensable. Justice Brown's concurrence noted that drawing the line at couples who are legally married was a reasonable, if somewhat arbitrary, choice.

**5.** The central elements of a wrongful death action, including those relevant here, have re-

mained essentially unchanged since the first wrongful death statute was enacted in New York in 1847. 36 N.Y.Jur.2d *Death* § 33 (1984).

**6.** The position advocated by defendant would, for example, bar an action on behalf of a child born after a parent sustained an ultimately lethal injury, while permitting such actions for the benefit of children born before the injury. That result would also be contrary to established New York law. *See In Re Giambertone's Estate,* 38 Misc.2d 784, 238 N.Y.S.2d 883 (Surr.Ct. Suffolk Cty.1963) (child conceived before decedent's death but born thereafter is entitled to participate in distribution of wrongful death recovery).

loss of consortium, which arises out of both the claimant's relationship with the victim of the underlying tort *and* the underlying tort itself. *See id.* § 5–4.1 subd. 1 (wrongful death action may be brought against any "person who would have been liable *to the decedent* ... if death had not ensued.") (emphasis added); *see also Griffin v. Bles,* 202 A.D. 443, 195 N.Y.S. 654 (3d Dep't 1922) (decedent's mother could maintain fraud claim because decedent could have had she lived). Therefore, the rationale of *Rademacher* and *Briggs* does not apply to wrongful death claims. To marry an injured person and then recover for loss of consortium, it can be said, would be to create a new liability that did not exist at the time of the tort. To marry a mortally injured person, however, has no effect on liability for wrongful death, which will accrue upon the injured person's demise in any event. The marriage simply creates a new beneficiary to share in the recovery. It is of no analytical significance that in this case Mrs. Walsh appears to be the only distributee. Given *Radley,* the distinctions between wrongful death claims and loss of consortium claims,[7] and defendant's failure to submit any case from any jurisdiction that disagrees with *Radley,*[8] the Court denies defendant's motion to dismiss the wrongful death claim.

In summary: All claims for loss of consortium are dismissed. The jury will not be instructed on loss of consortium as an element of damages on any claim. The motion to dismiss the wrongful death claim is denied, and the jury will be instructed on that claim. The jury will further be instructed that, if they find the defendant liable, in measuring damages for wrongful death they are to consider what Mr. Walsh's life expectancy would have been had he not been exposed to asbestos, not what his actual post-exposure life expectancy was at the time he married Mrs. Walsh.

SO ORDERED.

---

7. The facts of *Radley,* when compared to those of *Miller, supra,* vividly demonstrates the distinction. In *Miller,* a wedding had been planned for the day of the accident and was held as soon as possible after the accident; there was no suggestion that the decision to be married had anything to do with the injury. Yet the court applied the *Rademacher* rule that one cannot create a claim for loss of consortium by marrying an injured person.

In *Radley,* a seriously injured man importuned from his deathbed for the opportunity to marry his betrothed. The wedding was held within hours, and the husband died three days after his injury. The marriage obviously took place when it did only because of the injury.

Yet the court did not worry that plaintiff had "married a lawsuit," and permitted her to maintain the wrongful death action.

8. In accord with *Radley* are *Gross v. Electric Traction Co.,* 180 Pa. 99, 36 A. 424 (1897), and *Lovett v. Garvin,* 232 Ga. 747, 208 S.E.2d 838 (1974). In *Lovett,* the Supreme Court of Georgia reasoned that, because a wrongful death claim accrues only at death, and because death causes unique damages distinct from those caused by the underlying tort, one's status to maintain a wrongful death action is determined by one's relationship to the deceased at the time of death, not at the time of the injury.