[No. A133322. First Dist., Div. Five. June 13, 2012.]

SANDRA LEONARD, Plaintiff and Appellant, v.
JOHN CRANE, INC., Defendant and Respondent.

**COUNSEL**

Brayton Purcell, Alan R. Brayton, Lloyd F. LeRoy and Richard M. Grant for Plaintiff and Appellant.

Hassard Bonnington and Philip S. Ward for Defendant and Respondent.

OPINION

**BRUINIERS, J.**—Our law recognizes that when a spouse suffers a personal injury, the marital partner may likewise suffer injury as a consequence. In this case, appellant Sandra Leonard's husband, John Leonard, was diagnosed with mesothelioma, a progressive and fatal disease related to asbestos exposure. Sandra and John[1] were married at the time of his diagnosis, but not at the time of his exposure to asbestos-containing materials, many years earlier. In reliance on a decision of the Third District Court of Appeal in *Zwicker v. Altamont Emergency Room Physicians Medical Group* (2002) 98 Cal.App.4th 26 [118 Cal.Rptr.2d 912] (*Zwicker*), the trial court sustained, without leave to amend, defendant's demurrer to Sandra's claim for loss of consortium. *Zwicker* holds that a loss of consortium cause of action is cognizable only if the plaintiff was married to the injured spouse at the time of the defendant's wrongful conduct, regardless of when the injury becomes manifest. We disagree, and reverse to allow Sandra to pursue her claim.[2]

## I. BACKGROUND

The Leonards were married on April 20, 2001. In September 2010, John was diagnosed with mesothelioma. In December 2010, they sued several named and Doe defendants for personal injury and for loss of consortium arising from John's exposure to asbestos between 1958 and 1995.

In March 2011, the Leonards substituted John Crane, Inc. (Crane), as a Doe defendant. In April, Crane moved to strike Sandra's loss of consortium claim and demurred to the claim. Crane argued, "Loss of consortium . . . is available only to a plaintiff who is married to the injured party at the time of his injury. Plaintiffs allege that they married on April 20, 2001. Plaintiffs allege [John] was last exposed in 1995. Thus, [Sandra] is not entitled to claim a cause of action for loss of consortium as a matter of law, and this cause of action must be stricken." The company relied on *Zwicker*. There the Third District stated, "If there is no marriage at the time of the negligent or intentional act causing the injury, then there is no cause of action for loss of consortium, and later discovery of the injury will not change that result." (*Zwicker, supra*, 98 Cal.App.4th at p. 35.) Sandra countered that *Zwicker* was factually distinguishable and that the quoted language was dicta. Relying on *Hamilton v. Asbestos Corp.* (2000) 22 Cal.4th 1127 [95 Cal.Rptr.2d 701, 998 P.2d 403] (*Hamilton*), she argued that her cause of action for loss of consortium did not accrue until the injury to her marital relationship, which

---

[1] We use the parties' first names for clarity, intending no disrespect.

[2] Subsequent to oral argument in this matter, the Second District Court of Appeal reached the same conclusion as we do here. (*Vanhooser v. Superior Court (Hennessy Industries)* (2012) 206 Cal.App.4th 921 [142 Cal.Rptr.3d 230].)

occurred when John was diagnosed with mesothelioma in 2010. Crane insisted that the *Zwicker* holding was binding on the trial court even if wrongly decided. The trial court sustained the demurrer to Sandra's loss of consortium cause of action without leave to amend in May 2011, under what it believed to be the compulsion of *Zwicker*. We denied Sandra's petition for writ review of that order, explaining, "Petitioner has not persuasively demonstrated that she lacks an adequate remedy at law on appeal, and that writ review is appropriate under all of the circumstances." (*Leonard v. Superior Court* (Aug. 4, 2011, A132489) [nonpub. order].) The trial court thereafter entered judgment in favor of Crane and against Sandra. Sandra now appeals.

## II. DISCUSSION

### A. *Motion to Dismiss*

On April 20, 2012, Crane moved to dismiss this appeal. Crane reported that John had now dismissed his personal injury claim against Crane and that John's claims against the remaining defendants were scheduled for trial in April. Crane contends the appeal became moot because even if Sandra prevailed, she could no longer try her loss of consortium claim together with John's personal injury claims. Crane since informed us that John's remaining claims began trial in April and it appeared that trial would be completed before this appeal could be heard and decided. Sandra argues the appeal is not moot because she may pursue her claim independently from John's. We agree with Sandra and deny the motion.

"[L]oss of consortium is not a derivative cause of action. While the cause of action is triggered by the spouse's injury, 'a loss of consortium claim is separate and distinct . . . . [Citations.]' [Citation.]" (*Rosencrans v. Dover Images, Ltd.* (2011) 192 Cal.App.4th 1072, 1089 [122 Cal.Rptr.3d 22] (*Rosencrans*).) "[T]he injury incurred can neither be said to have been 'parasitic' upon the husband's cause of action nor can it be properly characterized as an injury to the marital unit as a whole. Rather, it is comprised of [the spouse's] own physical, psychological and emotional pain and anguish which results when [the injured spouse] is negligently injured to the extent that he [or she] is no longer capable of providing the love, affection, companionship, comfort or sexual relations concomitant with a normal married life. [Citation.]" (*Lantis v. Condon* (1979) 95 Cal.App.3d 152, 157 [157 Cal.Rptr. 22] (*Lantis*).) While joinder of a loss of consortium claim with the injured spouse's personal injury claim is encouraged, it is not

mandatory and a loss of consortium claim may be maintained independently. (*Rodriguez v. Bethlehem Steel Corp.* (1974) 12 Cal.3d 382, 406–407 [115 Cal.Rptr. 765, 525 P.2d 669] (*Rodriguez*); *Evans v. Dayton Hudson Corp.* (1991) 234 Cal.App.3d 49, 54–55 [285 Cal.Rptr. 550] (*Evans*).)

In many different contexts over a period of decades, California courts have held that a loss of consortium claim is an independent tort that does not rise or fall with the procedural fate of the injured party's personal injury claim. (*Brumley v. FDCC California, Inc.* (2007) 156 Cal.App.4th 312, 325 [67 Cal.Rptr.3d 292] [loss of consortium claim does not relate back to filing of original complaint for statute of limitations purposes because "these are the claims of different plaintiffs, and they seek different damages from the original claims"]; *Gapusan v. Jay* (1998) 66 Cal.App.4th 734, 742–743 [78 Cal.Rptr.2d 250] [an employer entitled to reimbursement from tort settlement for workers' compensation benefits paid to employee had no right to reimbursement from settlement sums for loss of consortium]; *Evans, supra*, 234 Cal.App.3d at pp. 53–55 [tolling under Ins. Code, § 11583, based on insurance payments to injured party does not apply to spouse's loss of consortium claim]; *Uram v. Abex Corp.* (1990) 217 Cal.App.3d 1425, 1436 [266 Cal.Rptr. 695] [special statute of limitations for personal injury arising from asbestos exposure does not apply to independent tort of loss of consortium of spouse]; *Abellon v. Hartford Ins. Co.* (1985) 167 Cal.App.3d 21, 25–26 [212 Cal.Rptr. 852] [loss of consortium claim subject to separate per person limit under liability policy because it compensates for separate injury to injured person's spouse]; *Lantis, supra*, 95 Cal.App.3d at pp. 157–158 [injured party's contributory negligence to his own injury does not operate to reduce spouse's recovery for loss of consortium]; see *Rosencrans, supra*, 192 Cal.App.4th at p. 1089 [conclusion that injured party's claims were barred by release of liability did not support conclusion that spouse's loss of consortium claim was also barred (dicta)].) In *Hahn v. Mirda* (2007) 147 Cal.App.4th 740 [54 Cal.Rptr.3d 527], we reiterated that a loss of consortium claim is an independent cause of action and also addressed the procedural issue presented here: does the dismissal of an injured party's personal injury claim moot an appeal from a judgment on the spouse's loss of consortium claim? Although not a contested issue in that case, we concluded that the appeal was unaffected by the dismissal. (*Id.* at p. 745, fn. 1.)

Crane acknowledges that "[t]echnically speaking" Sandra could pursue her claim on remand, but argues that as a practical matter Sandra cannot or will not establish her claim on remand. The company notes that Sandra would first have to prove Crane's responsibility for John's asbestos-related injuries in order to establish her claim for loss of consortium, and argues that John "has

abandoned his attempt to prove an asbestos-related claim against [Crane]. For that reason, there is no case to which [Sandra] can return in which [Crane's] liability to [John] will or can be shown." We are not persuaded. While Sandra can prevail on her claim only if she proves Crane caused John's injury, there is no reason she would be precluded from doing so in her own action.

John's dismissal of his cause of action against Crane has no impact on Sandra's ability to pursue her loss of consortium claim. They are separate causes of action. (*Hahn v. Mirda, supra*, 147 Cal.App.4th at p. 745, fn. 1.) John's dismissal was in any event without prejudice, and can have no arguable res judicata or collateral estoppel effect on Sandra's loss of consortium claim. (See *Shelton v. Superior Court* (1976) 56 Cal.App.3d 66, 79–80 [128 Cal.Rptr. 454] [personal injury claim and loss of consortium claim are separate causes of action that protect two separate primary rights]; *Gagnon Co., Inc. v. Nevada Desert Inn* (1955) 45 Cal.2d 448, 455 [289 P.2d 466] [" 'dismissal without prejudice . . . is not a bar to another action by the plaintiff on the same cause' "].)

Crane implies that John's dismissal of his claim is a concession that it lacked merit, but there is nothing in the appellate record before us which would justify such an assumption. John may have dismissed the claim for strategic reasons and he may choose to revive it in the event Sandra prevails in this appeal; it is also not self-evident based on the limited allegations in the complaint that a later-filed claim by John would necessarily be time-barred. (See *Hamilton, supra*, 22 Cal.4th at pp. 1144–1147 [Code Civ. Proc., § 340.2, the special statute of limitations applicable to asbestos-related injuries, does not begin to run until the plaintiff suffers and discovers "disability" as defined in the statute, which may never occur].) Crane argues that, even if Sandra technically may pursue her claim on remand, it is unlikely she will do so and Crane therefore should not be unreasonably burdened with having to defend this appeal. Again, the substantive merits of the Leonards' claims against Crane have not yet been determined. We decide appeals on the issues presented and do not triage them based on an assessment of whether they may be unreasonably burdensome on the respondents.

We find no reason to depart from the conclusion we reached in *Hahn v. Mirda, supra*, 147 Cal.App.4th 740. The motion to dismiss this appeal is denied and we proceed to consider the merits.

B. *Merits of the Appeal*

We review an order sustaining a demurrer de novo. (*Ortega v. Contra Costa Community College Dist.* (2007) 156 Cal.App.4th 1073, 1080 [67 Cal.Rptr.3d 832].) "When a demurrer is sustained, we determine whether the complaint

states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

When does a cause of action for loss of consortium arise? Both parties agree that the proper focus is on the date of the "injury" to the spouse, but disagree how that date should be determined in the context of asbestos-related disease. Crane insists that the injury to John occurred at the time of his exposure to asbestos-containing materials—the "insult" that initiated the progressive disease mechanism and thereby gave rise to John's claim. Sandra argues that her claim arose only once John had appreciable and actionable damage.

Relying on *Zwicker, supra*, 98 Cal.App.4th 26, the trial court sustained the demurrer to Sandra's loss of consortium claim because she was not married to John at the time he was exposed to the asbestos that allegedly caused his injuries. Sandra argues that *Zwicker* is factually distinguishable and that we should decline to follow what she characterizes as its dicta that the injury-producing *act* must occur during marriage for the spouse to have a valid loss of consortium claim. Instead, she urges us to recognize that a cause of action for loss of consortium may arise when a defendant's negligent conduct causes a latent and unappreciated injury that first becomes manifest after the injured party is married. We agree that a valid loss of consortium claim arises when a latent and unappreciated injury first becomes manifest during marriage and thus decline to apply *Zwicker*.

1. Rodriguez *and the Marriage Requirement*

■ The California Supreme Court first recognized a common law cause of action for loss of consortium in *Rodriguez, supra*, 12 Cal.3d 382. Applying general tort principles, the court reasoned that "one who negligently causes a severely disabling injury to an adult may reasonably expect that the injured person is married and that his or her spouse will be adversely affected by that injury. In our society the likelihood that an injured adult will be a married man or woman is substantial, . . . [a]nd the probability that the spouse of a severely disabled person will suffer a personal loss by reason of that injury is equally substantial." (*Id.* at p. 400, fn. omitted.) Thus, "each spouse has a

cause of action for loss of consortium . . . caused by a negligent or intentional injury to the other spouse by a third party." (*Id.* at p. 408.) Consortium " 'embraces such elements as love, companionship, affection, society, sexual relations, solace and more.' [Citation.] As to each, 'the interest sought to be protected is personal to the [spouse]' [citation] . . . ." (*Id.* at pp. 404–405.) Although these injuries are subjective, they are genuine and require compensation. (*Id.* at p. 401.)

In subsequent cases, our state's high court has declined to *expand* liability for loss of consortium to nonspouse plaintiffs, such as children or parents of injured parties (*Borer v. American Airlines, Inc.* (1977) 19 Cal.3d 441, 444–445 [138 Cal.Rptr. 302, 563 P.2d 858] (*Borer*); *Baxter v. Superior Court* (1977) 19 Cal.3d 461, 463 [138 Cal.Rptr. 315, 563 P.2d 871]) or their unmarried cohabitants (*Elden v. Sheldon* (1988) 46 Cal.3d 267, 269 [250 Cal.Rptr. 254, 758 P.2d 582] (*Elden*)).[3] *Borer* reasons that the tort "must be narrowly circumscribed. Loss of consortium is an intangible injury for which money damages do not afford an accurate measure or suitable recompense; recognition of a right to recover for such losses in [other contexts], moreover, may substantially increase the number of claims asserted in ordinary accident cases, the expense of settling or resolving such claims, and the ultimate liability of the defendants." (*Borer*, at p. 444; see *id.* at pp. 446–448.) *Borer* and *Elden* also note that, whereas *Rodriguez*'s recognition of a new cause of action for loss of consortium was consistent with the weight of authority in the developing common law across the country (*Rodriguez, supra*, 12 Cal.3d at pp. 389–390 & fn. 5), recognition of the tort on behalf of parents, children or unmarried cohabitants was not. (*Borer*, at p. 449; *Elden*, at p. 278.)[4]

---

[3] *Elden* approved several appellate decisions that had previously declined to recognize a loss of consortium cause of action for unmarried cohabitants, including engaged couples. (See *Elden, supra*, 46 Cal.3d at p. 278 & fn. 6; *Ledger v. Tippitt* (1985) 164 Cal.App.3d 625, 630–631, 633–639 [210 Cal.Rptr. 814] [injury occurred after couple's frustrated attempt to marry], disapproved on other grounds in *Elden, supra*, 46 Cal.3d at p. 277; *Lieding v. Commercial Diving Center* (1983) 143 Cal.App.3d 72, 73, 76 [191 Cal.Rptr. 559] [injury occurred while couple engaged and shortly before wedding date]; *Tong v. Jocson* (1977) 76 Cal.App.3d 603, 604–605 [142 Cal.Rptr. 726] [same]; *Etienne v. DKM Enterprises, Inc.* (1982) 136 Cal.App.3d 487, 489–490, 492 [186 Cal.Rptr. 321] [couple failed to prove they had valid common law marriage under Tex. law].)

[4] *Elden* cited the following cases from other jurisdictions that rejected a loss of consortium cause of action for unmarried cohabitants and engaged couples, some of which are cited by the parties in this appeal: *Tremblay v. Carter* (Fla.Dist.Ct.App. 1980) 390 So.2d 816, 816–818 (couple had discussed marriage before accident and married about five months after injury); *Sostock v. Reiss* (1980) 92 Ill.App.3d 200 [47 Ill.Dec. 781, 415 N.E.2d 1094, 1095] (couple married less than a month after injury); *Sawyer v. Bailey* (Me. 1980) 413 A.2d 165, 166–169 (injury occurred after couple announced engagement and before wedding date); *Briggs v. Julia L. Butterfield Memorial Hospital* (N.Y.App.Div. 1984) 104 A.D.2d 626 [479 N.Y.S.2d 758] (couple married more than two years after injury and falsely alleged they were married at

Specifically with respect to the requirement of marriage, *Elden* provides three policy rationales for limiting the cause of action. First, "the state has a strong interest in the marriage relationship; to the extent unmarried cohabitants are granted the same rights as married persons, the state's interest in promoting marriage is inhibited." (*Elden, supra*, 46 Cal.3d at p. 274; see *id.* at p. 279.) Second, a determination of whether an unmarried relationship is sufficiently stable and significant to be the equivalent of a formal marriage would place a difficult burden on the courts and would require intrusion into private relationships. (*Id.* at pp. 275–276, 279.) Although not expressly stated in *Elden*, this difficulty of proof also raises the prospect that a party will marry into a cause of action for reasons unrelated to the significance of the preinjury relationship. (See *Ledger v. Tippitt, supra*, 164 Cal.App.3d at p. 636.) Finally, *Elden* cites "the need to limit the number of persons to whom a negligent defendant owes a duty of care." (*Elden*, at p. 276; see *id.* at p. 279.) *Elden* did not question the *Rodriguez* rationale for recognizing the loss of consortium cause of action for married spouses.

### 2. *Zwicker*

The trial court sustained Crane's demurrer in reliance on *Zwicker, supra*, 98 Cal.App.4th 26. In *Zwicker* the appellate court declined to recognize a loss of consortium claim where the defendants' negligent conduct (medical malpractice) predated the marriage. In that case, Gary Zwicker went to an emergency room complaining of pain in his left scrotum and, allegedly due to medical malpractice, was told there was no evidence of testicular torsion and discharged. (*Id.* at p. 29.) When he later returned with increased pain, a urologist diagnosed probable torsion and performed emergency surgery, resulting in removal of one of Zwicker's testicles. Over the next 11 months, three tests showed that Zwicker was infertile. He then married. Two weeks after the marriage, his wife sued for loss of consortium, arguing she learned that Zwicker's infertility was permanent only after the marriage. (*Ibid.*) The court affirmed summary judgment in favor of the defendants, reasoning that because the wife had no right to Gary's consortium at the time of the misdiagnosis, she suffered no actionable loss as a result of the defendants' alleged negligence. The court held that "[a] premarital injury does not give rise to a cause of action for loss of consortium at the time it occurs, and the postmarital discovery of the premarital injury cannot create a cause of action for loss of consortium where one did not exist in the first place." (*Id.* at p. 30.) Rejecting application of a delayed discovery rule, the court held that "a premarital injury cannot provide the basis for a loss of consortium claim in California, regardless of whether the plaintiff first learned of the injury before or after the marriage. If there is no marriage at the time of the negligent or

time of injury); *Haas v. Lewis* (1982) 8 Ohio App.3d 136 [8 Ohio B. 192, 456 N.E.2d 512, 513] (unmarried cohabitants). (See *Elden, supra*, 46 Cal.3d at p. 278.)

intentional act causing the injury, then there is no cause of action for loss of consortium, and later discovery of the injury will not change that result." (*Id.* at p. 35.)

We disagree that the broad conclusion thus stated in *Zwicker* can be reasonably or fairly applied in the context of disease resulting from long-latency toxic exposure. We also note that *Zwicker* is factually distinguishable, and we have no quarrel with the result reached in that case. On the facts presented, the injury to Gary Zwicker clearly occurred and became manifest before the couple's marriage: Gary's testicle was surgically removed and three tests showed he was infertile. (*Zwicker, supra,* 98 Cal.App.4th at p. 29.) It was only the permanence of the infertility that was discovered after the date of the marriage. The wife's argument for a loss of consortium claim was simply an assertion that her claim did not arise until she knew the full extent of her spouse's injury. On point is *Priola v. Paulino* (1977) 72 Cal.App.3d 380 [140 Cal.Rptr. 186] (*Priola*). In *Priola*, the wife was injured in a car accident in March 1973 and the husband did not sue for loss of consortium until May 1975, beyond the one-year limitations period. (*Id.* at p. 382.) The husband argued that the limitations period had not begun to run until September 1974, when the wife was permanently disabled by Parkinson's syndrome. (*Id.* at p. 383.) The court rejected the argument: "It is clear that the husband's loss . . . was apparent on March 28, 1973. It was only a question of the degree of that loss that remained to be discovered." (*Id.* at p. 390.) The rule is "well-settled" that an injury claim matures, and the limitations period within which a claim must be brought commences, once there is " 'appreciable and actual harm, however uncertain in amount.' " (*Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 796 [123 Cal.Rptr.3d 578, 250 P.3d 181]; see *Davies v. Krasna* (1975) 14 Cal.3d 502, 514 [121 Cal.Rptr. 705, 535 P.2d 1161]; *Budd v. Nixen* (1971) 6 Cal.3d 195, 200–201 [98 Cal.Rptr. 849, 491 P.2d 433] (*Budd*), superseded in part by Code Civ. Proc., § 340.6.) Similarly in *Zwicker*, the injury to the husband was apparent and appreciable before the marriage and only the degree of the injury (i.e., whether the infertility would be permanent) remained to be discovered. Thus, *Zwicker* correctly determined that the wife did not have a valid claim for loss of consortium on the facts of that case.

*Zwicker*, however, went further and held that the date of discovery of the husband's injury was irrelevant. *Zwicker* articulated a broader principle that a cause of action for loss of consortium necessarily arises at the time that the wrongful conduct occurs. We cannot agree.

3. *Approach in Other Jurisdictions*

There is a split in authority regarding the question we consider here: if a defendant's negligence toward an unmarried individual causes a latent injury

that does not become manifest until after the individual marries, does the spouse have a cause of action for loss of consortium? The state of the law is aptly summarized in a 2005 decision of Maryland's highest court, *Owens-Illinois, Inc. v. Cook* (2005) 386 Md. 468 [872 A.2d 969] (*Cook*), a case also dealing with mesothelioma resulting from long-latency toxic exposure.

"[T]he general rule . . . is that a claim for loss of consortium does not lie for an ante-nuptial tort [citations]. [¶] One rationale offered for the rule is to prevent a person from marrying a cause of action [citations]. Closely related, another recognizes that one spouse takes the other in his or her then existing state of health and assumes the risk of any deprivation resulting from prior disability. [Citations.] . . . A third rationale is that, as a matter of social policy, tort liability should be limited. [Citation.] [¶] When the injury and the harm coalesce and manifest at the same time, the cause of action both arises and accrues at approximately the same time, the issue is uncomplicated, even simple, and straightforward; knowledge of the injury will be apparent. That is not the case, however, when the injury is latent and, thus, has not been, and reasonably could not have been, discovered prior to the marriage. The courts that have considered the loss of consortium issue in this latter context have reached different results.

"Some courts hold that there can be no cause of action for loss of consortium 'where, prior to the marriage, the plaintiff spouse was exposed to, and ingested, a substance that remained in his body and eventually caused illness, but the illness did not occur until after the marriage.' [Citations.] These cases proceed on the basis that the marriage requirement for a loss of consortium claim is absolute, that if the marriage post-dated the injury, there is no consortium claim. . . . [T]he discovery rule cannot save a cause of action that never was. . . . [¶] Other courts, 'conclud[e] that permitting loss of consortium claims [under these circumstances] does not thwart the policies of the consortium rule. The spouse is not marrying into a cause of action because, at the time of the marriage, neither spouse knows or could know, through the exercise of reasonable care and diligence, of the latent injury.' [Citations.] [¶] . . . [¶] . . . '[T]he best argument for rejecting the [require-ment] . . . is its fundamental unfairness in the toxic exposure context: loss of consortium damages should be available for a premarital injury if the injured spouse either does not know or cannot know of the injury.' [Citation.]" (*Cook, supra,* 872 A.2d at pp. 981–984 [reviewing state and federal cases from 17 jurisdictions, including *Zwicker*].)

*Cook* agreed that a loss of consortium cause of action should be recognized on the facts before the court. "When the Gianottis married, it is undisputed that Mr. Gianotti's mesothelioma had not been diagnosed. More importantly, it is also undisputed that the parties to the marriage neither knew, nor reasonably could have known, of the injury that formed the basis for the joint claim. We agree with *Green* that it would be fundamentally unfair not to permit the loss of consortium claim in this context . . . ." (*Cook, supra,* 872 A.2d at p. 984.)

### 4. *Loss of Consortium and Latent Disease*

■ Our Supreme Court has recognized the unique problems presented in determining the time of accrual for a cause of action arising from latent, progressively developing diseases such as mesothelioma or asbestosis, where decades can pass between the first asbestos exposure and development of cancerous mesothelioma tumors. (*Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520 [66 Cal.Rptr.2d 438, 941 P.2d 71] (*Buttram*).)[5] " 'The difficulties in asbestosis cases arise because, unlike in traditional personal injury cases in which the damage results from a single, identifiable act causing traumatic injury, in asbestosis cases the damage results from a continuous process—a slow development of this hidden disease over the years. [Citation.] Compounding the problem, asbestosis cases are characterized by a lengthy latency period—typically ranging a decade or two—and, consequently, a lengthy temporal separation between the tortious conduct and the appearance of injury. [Citation.] This lengthy latency period renders efforts to pinpoint the date on which the disease was contracted virtually impossible, medically and legally. [Citations.] Further, this inability to pinpoint when injuries were sustained in asbestosis cases renders determining the date on which a plaintiff's cause of action accrued a herculean task.' [Citation.]" (*Buttram,* at p. 530.) " 'The combination of lengthy latency periods and diagnostic difficulties is a unique feature of toxic substances cases for purposes of statutes of limitations analysis [or related legal issues]: No temporally discrete event exists that encompasses the defendant's breach and the plaintiff's injury. Instead, insidious disease litigation involves an extended chronology of causation unlike traditional snapshot torts.' [Citation.]" (*Buttram,* at p. 529.) Consequently, the high court noted that "such a

---

[5] In a related area, the court has also recognized that exposure to toxic substances may generate separate and distinct disease processes, and thus qualitatively distinct *injuries*, subject to differing limitations periods. (*Pooshs v. Philip Morris USA, Inc., supra,* 51 Cal.4th at pp. 792, 802–803 [separate and distinct smoking-related diseases (chronic obstructive pulmonary disease and lung cancer) with separate etiology present distinct physical injuries and permit successive claims].)

cause of action may be viewed in the eyes of the law as 'accruing' for different purposes on different dates, depending on the purpose for which the accrual determination is being sought"—in that instance, retroactive application of limitations on noneconomic damages created by Proposition 51 (Civ. Code, §§ 1431–1431.5). (*Buttram*, at pp. 530–531.) The court recognized that actual, actionable harm or injury is an essential element of a ripe cause of action in negligence or strict liability, and that "a plaintiff's cause of action accrues for purposes of the statute of limitations upon the occurrence of the *last* element essential to the cause of action; that is when the plaintiff is first entitled to sue. [Citations.]" (*Id.* at p. 531, fn. 4.) Under this rule, a cause of action for a latent injury or disease generally accrues, in the sense that it is ripe for suit, when the plaintiff discovers or should reasonably have discovered he has suffered a compensable injury.[6] (*Buttram*, at pp. 530–531; see *Hamilton, supra*, 22 Cal.4th at p. 1144.) "Until the plaintiff's injury is first diagnosed or discovered by the plaintiff, he has no awareness of his disease or injuries, or of the possibility of a future need to file suit, much less any expectation of recovery. . . . [¶] Moreover, until there has been actual harm or injury *and an awareness of same*, there can be no noneconomic damages to be pled—such as pain, mental suffering, inconvenience, emotional distress, loss of society and companionship, loss of consortium, or injury to reputation and humiliation . . . ." (*Buttram*, at p. 535.) In this case, John's claim was therefore not ripe, and his own causes of action did not accrue until the time of his diagnosis.

■ It is difficult to see how different considerations should then apply to accrual of Sandra's claim for loss of consortium. First, her cause of action, while separate, is still "by its nature, dependent on the existence of a cause of action for tortious injury to a spouse . . . , [and] it stands or falls based on whether the spouse of the party alleging loss of consortium has suffered an actionable tortious injury. [Citations]." (*Hahn v. Mirda, supra*, 147 Cal.App.4th at p. 746.) The cause of action for loss of consortium "arises out of the bodily injury to the spouse who can no longer perform the spousal functions. It is the loss of conjugal fellowship, affection, society and companionship which gives rise to the cause of action. [Citation.]" (*United Services Automobile Assn. v. Warner* (1976) 64 Cal.App.3d 957, 964 [135 Cal.Rptr.

---

[6] Perhaps uniquely in asbestos cases, the accrual period differs from the limitations period, which is governed by Code of Civil Procedure section 340.2. (*Hamilton, supra*, 22 Cal.4th at pp. 1144–1145.) Under Code of Civil Procedure section 340.2, the statute of limitations commences within one year after the date the plaintiff first suffered a disability or within one year after the date the plaintiff knew or should have known that such disability was caused or contributed to by exposure to asbestos, whichever is later. (*Blakey v. Superior Court* (1984) 153 Cal.App.3d 101, 105 [200 Cal.Rptr. 52].) The declared purpose of Code of Civil Procedure section 340.2 is to afford victims of asbestos exposure the opportunity to seek compensation for injuries which are manifested years after the exposure. (*Blakey, supra*, at p. 105.)

34].) The manifestation of the injury to John giving rise to Sandra's claim and Sandra's injury all occurred during their marriage.

*Zwicker, supra*, 98 Cal.App.4th 26 rests on the view that the plaintiff's loss of consortium cause of action came into existence, if at all, when the defendant committed the wrongful act. But a claim for loss of consortium could not come into existence until the defendant's negligent conduct causes the plaintiff actual and appreciable harm. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 [245 Cal.Rptr. 658, 751 P.2d 923] ["the common law rule, that an action accrues on the date of injury . . . , applies only as modified by the 'discovery rule' " (citation omitted)]; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 [87 Cal.Rptr.2d 453, 981 P.2d 79] [a cause of action accrues "when the cause of action is complete with all of its elements"].) As the Supreme Court has explained, "we have drifted away from the view held by some that a limitations period necessarily begins when an act or omission of defendant constitutes a legal wrong as a matter of substantive law. [Citation.] Rather, we generally now subscribe to the view that the period cannot run before plaintiff possesses a true cause of action, by which we mean that events have developed to the point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." (*Davies v. Krasna, supra*, 14 Cal.3d at p. 513.) In *Budd*, for example, a legal malpractice case, the court held that "until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." (*Budd, supra*, 6 Cal.3d at p. 200, fn. omitted.) This rule applied even though the client was aware of the attorney's negligent conduct (and thus the *potential* for harm) before actual and appreciable harm occurred. (*Id.* at p. 199.) A client may not, however, wait to see how severe the damage will become before filing suit. "The cause of action arises . . . before the client sustains all, or even the greater part, of the damages occasioned by his attorney's negligence. [Citations.] Any appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue." (*Id.* at p. 201; see *Davies v. Krasna*, at p. 514 ["the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period"].)

Under Crane's proposed test, subclinical (i.e., undiscovered and unmanifested) cellular changes, such as development of the first cancer cell, constitute the spousal injury that would trigger a cause of action for loss of consortium, whether or not the spouse suffered any actual symptoms of the disease, was unaware he/she would contract the disease, and was not diagnosed with the disease at the time the undetected cellular changes first occurred. The Supreme Court clearly rejected such an analysis in *Buttram*. (*Buttram, supra*, 16 Cal.4th at p. 525.)

 The relevant injury in a loss of consortium claim is injury to the spouse's enjoyment of the marital relationship. (See *Rodriguez, supra,* 12 Cal.3d at pp. 404–405; *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798 [108 Cal.Rptr.3d 806, 230 P.3d 342] [for a loss of consortium claim, the *"primary right* [i]s the right not to be wrongfully deprived of spousal companionship and affection, and the *corresponding duty* [i]s the duty not to wrongfully deprive a person of spousal companionship and affection"].) That injury does not occur until the direct victim suffers an appreciated physical or emotional injury due to the defendant's negligent conduct that in turn damages the marital relationship.

 Our approach is fully consistent with tort principles of duty and foreseeability. A defendant is held liable for its failure to act with reasonable care not because the defendant *knows* that its negligence will cause injury to the plaintiff but because it is reasonably foreseeable that an injury might occur. (See *Rodriguez, supra,* 12 Cal.3d at pp. 399–400.) A defendant responsible for toxic exposure breaches a duty of reasonable care because it is reasonably foreseeable not only that the individual will develop injury from that exposure (albeit years after the exposure) but also that the individual may marry or be married and the spouse will suffer injury (harm to his or her enjoyment of the marital relationship) due to that exposure. (*Ibid.*) As a matter of foreseeability and duty, it matters not whether the exposed individual is married at the time of the wrongful conduct or marries later but before the injury is manifest.

 In sum, we reject the rationale in *Zwicker, supra,* 98 Cal.App.4th 26, that a cause of action for loss of consortium cannot arise unless the marital relationship exists at the time of the defendant's wrongful conduct. Instead, we agree with the rationale of *Cook, supra,* 872 A.2d 969 and the cases cited therein. We hold that where an injury to a spouse that in turn causes injury to the plaintiff's right to consortium in the marital relationship is not discovered or discoverable until after the couple's marriage, and the underlying cause of action thus accrues during the marriage, the plaintiff has a valid claim for loss of consortium even though the negligent conduct may have predated the marriage.[7]

---

[7] Crane argues, "[E]ven if the date of injury were the linchpin to deciding whether [Sandra] has a cause of action, she has failed to establish that the trial court was wrong in ruling that the FAC [(first amended complaint)] was irreparably deficient in this respect. Indeed, *the FAC does not allege when [John's] injury occurred.*" Contrary to Crane's implication, the trial court did not sustain the demurrer on the ground that the complaint did not clearly allege that John's injury first occurred or became manifest after marriage. The court sustained the demurrer under *Zwicker, supra,* 98 Cal.App.4th 26, because "all of [John's] claimed exposure to asbestos pre-dated his marriage . . . ." In any event, "[l]eave to amend is liberally allowed; a specific request to amend is not required as a prerequisite to review on appeal the trial court's decision

### III. Disposition

The judgment is reversed. John Crane, Inc., shall bear Sandra Leonard's costs on appeal.

Jones, P. J., and Simons, J., concurred.

---

not to grant leave to amend. [Citation.]" (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1348 [81 Cal.Rptr.3d 852].)